IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MICHAEL DAVID STUNTZ, § | | |
| INDIVIDUALLY AND ON BEHALF § | | |
| OF ALL THOSE SIMILARLY § | | |
| SITUATED § | | |
| § | | |
| Plaintiffs § | | |
| VS § | C.A. No. _____ | |
| § | | |
| ASHLAND ELASTOMERS, LLC; § | | |
| ISP SYNTHETIC ELASTOMERS, LP; § | | |
| ISP SYNTHETIC ELASTOMERS, LLC § | COLLECTIVE ACTION | |
| § | | |
| Defendants § | | |

**PLAINTIFFS' ORIGINAL COLLECTIVE ACTION COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, MICHAEL DAVID STUNTZ, INDIVIDUALLY AND ON BEHALF OF ALL THOSE SIMILARLY SITUATED, and files this Original Petition complaining of ASHLAND ELASTOMERS, LLC, ISP SYNTHETIC ELASTOMERS, LP, and ISP SYNTHETIC ELASTOMERS, LLC, Defendants, and for cause of action would respectfully show this Court as follows:

I.

**JURISDICTION AND VENUE**

1. The case arises under the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 201 *et seq* (hereinafter "FLSA").

2. This Court has jurisdiction of this case pursuant under Section 16(b) of the FLSA (29 U.S.C. §216(b)), by the provisions of 28 U.S.C. Sections 1331, 1337

and 1367.

3. Plaintiff brings this complaint in the Eastern District of Texas in which he resides and where a substantial amount of the Defendants' conduct, events or omissions occurred giving rise to these causes of action. Accordingly, the court has personal jurisdiction over the parties and venue is proper in this district pursuant to 28 U.S.C. Section 1391 (b).

## II.

## PARTIES AND SERVICE

4. The Plaintiff appears in this action on behalf of himself and all those that are similarly situated.

5. Defendant, ASHLAND ELASTOMERS, LLC, ("Ashland") is a company doing business in the state of Texas which at all relevant times had its principal office in Texas located at 1215 Main Street, Port Neches, Jefferson County, Texas and may be served with process by serving its registered agent: **C.T. Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.**

6. Defendant, ISP SYNTHETIC ELASTOMERS, LP, ("ISP LLC") is a limited partnership doing business in the state of Texas which at all relevant times had its principal office in Texas located at 1215 Main Street, Port Neches, Jefferson County, Texas  and may be served with process by serving its registered agent: **C.T. Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.**

7. Defendant, ISP SYNTHETIC ELASTOMERS, LLC, ("ISP LLC") is limited liability company serving as the general partner of ISP SYNTHETIC

ELASTOMERS, LP, and which at all relevant times had its principal office in Texas located at 1215 Main Street, Port Neches, Jefferson County, Texas. Defendant ISP LLC may be served with process by serving its registered agent: **C.T. Corporation System, 350 N. St. Paul Street, Suite 2900 Dallas, Texas 75201.**

8. Plaintiff, MICHAEL DAVID STUNTZ ("Stuntz") has been employed by Defendants at different times since around December 2010 at the same elastomers, chemical plant located in Port Neches, Jefferson County, Texas. Specifically, when Plaintiff began his employment with the elastomers chemical plant in question, the plant was owned and operated by Defendants ISP LP and ISP LLC. Upon information and belief, Defendants ISP LP and ISP LLC merged with Defendant Ashland during the term of Plaintiff's employment. Plaintiff's position as an operator and the general day to day activities of his job have remained consistent since the beginning of his employment through today. The wrongful acts and damages made the subject of this action arose before and after the merger between the Defendants such that all Defendants are liable, in whole or in part, for the wrongful conduct and damages made the subject of this lawsuit. During his employment with the Defendants, Plaintiff was covered under the FLSA. Plaintiff Stuntz's consent to sue is attached as Exhibit "A."

9. Along with the named Plaintiffs, the Defendants employed additional similarly situated employees within the last (3) three years.

10. The named Plaintiff brings this claim individually and as part of a collective action under the FLSA 29 U.S.C. §216(b) on the behalf of other employees of

Defendants during the (3) three year period prior to filing this lawsuit who where non-exempt employees who were required to work "off the clock" and denied overtime compensation for all hours worked in excess of forty (40) hours in a week.

11. The class members (hereinafter "Class Members") are all current and former hourly employees of Defendants who have worked in Defendants' elastomers chemical plant during the (3) three year prior to filing this complaint. Plaintiffs were and continue to be required to arrive to the worksite before the start of the pay period, don PPE on-site and ready themselves prior to the start of the pay period, then, in the evening, doff PPE on-site, shower, and depart the work site off the clock. These employees are similarly situated as Plaintiff Stuntz and engaged in commerce or in the production of goods for commerce during the employment duties for the Defendants. This collective action is for all the "off the clock" hours and overtime hours that were worked for the Defendants without overtime compensation on the behalf Plaintiff himself, along with other similarly situated employees in addition to all other liquated damages, interest, reasonable attorney's fees and costs.

## III.

## FACTUAL BACKGROUND

12. Plaintiff MICHAEL DAVID STUNTZ ("Stuntz") began his employment with Defendants in December 2010 working at Defendants' rubber manufacturing plant located in Port Neches, Texas. The plant is a chemical plant specializing in the production of synthetic rubber, the uses of which include manufacturing of tires.

13. At all relevant times, Plaintiff Stuntz and many, but not all, of his similarly situated co-workers have been members of the United Steelworkers Local 228, and have been paid on an hourly basis for a predetermined pay period of 5:00am to 5:00pm. With this predetermined pay period in mind, Plaintiff's job responsibilities have, at all relevant times, required Plaintiff and the Class Members to badge into the plant through a turnstile and clock in a time alley at approximately 4:30am, followed by donning of PPE, and reporting to the job post to make a shift change. For years, this process of reporting to the worksite 30 minutes early, donning PPE and replacing the night shift was Defendant's corporate policy and was referred to as "Early Relief."  That is, the Early Relief Policy provided for an early badge in at 4:30am during which time Plaintiff and his co-workers were suffered and/or permitted to don PPE on site and walk or bicycle to their assigned area to relieve the night shift all before the start of the pay period at 5:00am. At the end of the workday, Plaintiff and his co-workers doff their PPE at the plant, shower and badged out.

14. At all relevant times, Plaintiff has served on the Worker's Committee for the United Steelworkers Union Local 228 ("Local 228").  On or about May 28, 2013, Plaintiff Stuntz, together with his co-workers serving on the Worker's Committee for Local 228, sent a written Grievance Report to Defendants advising Defendants that the "Early Relief" policy requiring employees to perform work related activities "off the clock" was in violation of the Fair Labor Standards ("FLSA"). *See* Exhibit B – Grievance Report.

15. On June 3, 2013, Defendants responded to Plaintiff's Grievance Report advising the Workers' Committee that any alleged violation of the FLSA was not covered by the collective bargaining agreement ("CBA") and Plaintiff's complaint should be directed to the appropriate government agency. *See* Exhibit C.

16. Following Defendants' June 3rd response, Defendants and the Worker's Committee held meetings to discuss a settlement of Defendants' violations of the FLSA. By September 2013, Defendants had agreed to the following relevant matters:

   1. Defendants agreed to pay Plaintiff and his co-workers additional wages – either overtime or straight time -- based on a comparison of each individual's actual pay versus their punch times in and out of the time clock, with a deduction of 6 minutes (the amount of time Defendants claimed it would have taken Plaintiff and his co-workers to walk between the gate/time clock and the worksite two times daily. (ie. the distance between the gate where Plaintiff badged in and the area where he donned and doffed PPE and showered.) *See* Exhibit D.

   2. Defendants had received prior complaints concerning the "Early Relief Policy," therefore, Defendants agreed to pay overtime for the prior 3 years as authorized by the FLSA for intentional violations of the Act. Additionally, Defendants agreed to pay a penalty equal to the total amount of overtime and/or straight time due to each individual. *See* Exhibit D.

   3. Defendants taxed the distributions at a supplemental tax rate of 25% for federal withholding tax and withheld other required taxes as well. *See* Exhibit D.

   4. For straight time and overtime portions of the payout, 401K was withheld at the individual's current election amount and matched according to company policy. However, the penalty portion was not 401K eligible. *See* Exhibit D.

      5. Going forward, Defendants relocated the time clocks from the gate to a location beyond the "donning, doffing, showering" area, and officially stopped the 30 Minute Relief Policy.  *See* Exhibit D.

17.    Defendants' above representations applied to all current and former employees affected by the illegal pay Early Relief policy.  In specific regards to item no. 5, the fact that the time clocks were physically moved from the gate to a location beyond the area of the worksite where Plaintiff donned/doffed PPE, did not, as a practical matter cure the illegal Early Relief Policy.  That is, Plaintiff and his co-workers are still required and/or permitted to arrive up to 30 minutes before the start of the pay period (5:00am) in order to don required PPE and be ready to clock in by 4:55am.

18.    In September 2013, and pursuant to its promises and agreements described in Exhibit C, Defendant began issuing checks to current employees.  Upon receipt of his check, Plaintiff Stuntz compared the amount of his distribution check to his actual punch times, which showed that Defendant had still failed to properly compensate him for the applicable three year period. Plaintiff met with Defendant's human resource department to discuss said miscalculations; however, despite being made aware of the miscalculations, Defendants failed and/or refused to correct the miscalculations or make the additional distributions.  Additionally, upon information and belief, the distributions Defendants have thus far made do not include all affected current and former employees and do not fully meet either formula/method Defendant agreed to use in calculating wages owed and penalty or actual requirements of the FLSA.

19. As demonstrated above, during their employment, Plaintiff was and continues to be required and/or permitted to work in excess of forty (40) hours per week on a regular basis, without compensation for the extra hours worked.

20. It was a regular business practice of the Defendants to alter records of the actual hours worked in violation of FSLA record keeping requirements.

21. Plaintiff is entitled to overtime compensation at a rate not less than one and one-half times the regular rate at which he actually was employed for the overtime hours and "off the clock" hours from the Defendants, who refused to pay it in violation of the FLSA.

22. Other employees similarly situated also worked in excess of forty (40) hours per week on a regular basis and were required to work "off the clock" and were not paid by the Defendants for the extra hours that were worked in violation of the FLSA.

23. By forcing the Plaintiff and Class Members to work "off the clock" hours and refusing to pay the overtime hours and the proper overtime compensation, the Defendants intentionally violated the FLSA.

24. There is no exemption that excuses the Defendants from paying the overtime hours and proper overtime compensation to the Plaintiff and other employees similarly situated.

25. The Defendants' actions were knowingly, willfully, or with the reckless disregard for the failure to properly pay for "off the clock" hours, overtime hours and

overtime compensation.

## IV.

## COLLECTIVE ACTION ALLEGATIONS

26. This action is allowed to be a collective action as to claims for all the overtime hours and overtime compensation, liquidated damages, interest, reasonable attorney's fees and costs under FSLA.  In addition to the Named Plaintiff, many current and former employees of the Defendants are similarly situated with regards to the wage violations as described above, in that they have been refused proper overtime compensation for at least three years prior to the filing of this lawsuit which would constitute the Class Members.

27. The Plaintiff's experiences are representative of those of the current and former employees which constitute the Class Members, and they will fairly and adequately represent and protect the interest of the proposed class.  Plaintiff has no interests opposite to those of the other members of the proposed class and Plaintiff's attorneys are able and willing to conduct this litigation.

28. The Class Members of similarly situated plaintiffs would be properly defined as:

> All current and former employees of Defendants, who worked in Defendants' elastomers chemical plant located in Port Neches, Texas during the (3) three year prior to filing this complaint who are,
>
> 1. required to report to the plant before the start of the pay period to perform work related activities prior to the pay period, including maintaining and donning of PPE, making early relief of the prior shift.
>
> 2. Required to remain at the plant after the end of the pay period

> to perform work related activities, such as doffing PPE and showering.

29. The class shall not include presiding judge, any persons currently employed by the United States Government and working in the offices of or on behalf of the District Clerk for the Eastern District of Texas, or in the office of or on behalf of any judge sitting in the Eastern District of Texas, and any person who become so employed or so work prior to the entry of a Final Judgment in this action.

30. A collective action is the best method for the fair and efficient adjudication of the claims asserted herein, and Plaintiff is not aware of any difficulties that are likely to be encountered in the management of this collective action.

31. This action is allowed to be a collective action as to claims for all the overtime hours and overtime compensation, liquidated damages, interest, reasonable attorney's fees and costs under FSLA. In addition to the Plaintiff, many current and former employees of the Defendants are similarly situated with regards to the wage violations as described above, in that they have been refused proper overtime compensation for at least three years prior to the filing of this lawsuit which would constitute the Class Members.

32. The Plaintiff's experiences are representative of those of the current and former employees which constitute the Class Members, and Plaintiff will fairly and adequately represent and protect the interest of the proposed class. Plaintiff has no interests opposite to those of the other members of the proposed class and Plaintiff's attorney is able and willing to conduct this litigation.

## V.

## CAUSES OF ACTION

33. The Plaintiff and Class Members incorporate by reference all the aforementioned allegations contained in paragraphs 1 through 32.

34. The Defendants negligently or willfully failed to pay the Plaintiffs and Class Members for actual wages worked and overtime hours worked at compensation rate of one and one-half times their appropriate hourly rate in violation of the FLSA.

35. The Defendants negligently or willfully failed to keep adequate records of actual hours worked by the Plaintiff and Class Members, also in violation of the FLSA.

36. The Plaintiff and Class Members are entitled to the unpaid wages and unpaid overtime wages at a rate of one and one-half times their appropriate hourly rates, as well as an additional equal amount as liquidated damages resulting from the Defendants' willful violation of the FSLA. Plaintiff and Class members are further entitled to recover their reasonable attorney's fees, expert fees that the court deems appropriate, pre-judgment and post-judgment interest on all damages, and costs. 29 USC Sections 207, 216(b), 255(a).

## PRAYER

WHEREFORE, Plaintiffs prays for judgment against Defendants as follows:

    a.    For an order certifying this matter as an collective action under the Federal Rules of Civil Procedure, and appoint Plaintiff and his attorneys to represent the class;

b. For an order directing that all collective action members be notified of the pendency of this action and given an opportunity to consent to participation, at the cost of Defendants;

c. For damages for the full amount of the unpaid wages and unpaid overtime wages, as well as an additional equal amount as liquidated damages resulting from the Defendants' willful violation of the FSLA;

d. For any additional damages, actual, special and incidental, that are recoverable under law as the evidence may show proper;

e. For reasonable attorney's fees;

f. For all costs and expenses of these proceedings including expert fees as the Court deems appropriate;

g. For pre-judgment and post-judgment interest at the highest rates allowable by law; and

h. For other relief, in law or in equity, as to which Plaintiffs and Class Members are allowed by law.

Respectfully submitted,

REAUD, MORGAN & QUINN, L.L.P.
801 Laurel Street
P. O. Box 26005
Beaumont, Texas 77720-6005
(409) 838-1000
Fax (409) 833-8236

*/s/ John Werner*
John Werner
State Bar No. 00789720

*/s/ Mark Frasher*
Mark Frasher, on behalf of Reaud, Morgan & Quinn
Texas Bar No. 00798187

Attorneys for Plaintiffs

PLAINTIFFS RESPECTFULLY DEMAND TRIAL BY JURY.