IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MICHAEL DAVID STUNTZ, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Cause No. 1:14-CV-00173 |
| | § | |
| ASHLAND ELASTOMERS, LLC et al., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT LION ELASTOMERS LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT:  ON PLAINTIFFS' DONNING AND DOFFING CLAIMS

Respectfully submitted,

Teresa Valderrama
State Bar No. 20422500
Fisher & Phillips LLP
910 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 292-0150 Phone
(713) 292-0151 Fax
tvalderrama@fisherphillips.com

ATTORNEY-IN-CHARGE FOR
DEFENDANT LION ELASTOMERS LLC

OF COUNSEL:
Jeff Barnes
State Bar No. 24045452
jbarnes@fisherphillips.com
Mayra Cuello
State Bar No. 24074096
mcuello@fisherphillips.com
Fisher & Phillips LLP
910 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 292-0150 Phone
(713) 292-0151 Fax

**TABLE OF CONTENTS**

Table of Authorities ........................................................................................................ iii

I.      Introduction ........................................................................................................ 1

II.     Issues Presented ................................................................................................. 2

III.    Statement of Undisputed Material Facts ........................................................... 3

        A.      Plaintiffs' employment is governed by a collective bargaining agreement ............ 3

        B.      No CBA has prescribed pay for donning and doffing ............................................ 3

        C.      There has been an actual practice of non-compensation for donning and
                doffing since at least 1990 ...................................................................................... 4

        D.      There was a policy of non-compensation for donning and doffing when the
                employees were paid according to "early shift relief" ........................................... 4

        E.      The policy of non-compensation for donning and doffing continued after
                employees were paid based on clock punches ......................................................... 4

IV.     Procedural background ....................................................................................... 5

V.      Argument and Authorities .................................................................................. 6

        A.      Section 3(o) of the FLSA bars Plaintiffs' donning and doffing claims ................. 6

                1.      Section 3(o) governs the types of pre-and post-shift activities for which
                        Plaintiffs seek compensation ...................................................................... 6

                2.      The undisputed evidence establishes a "custom or practice" as a matter of
                        law ............................................................................................................... 7

                        a)      There was a policy or practice of non-compensation for
                                donning and doffing in effect for a prolonged period of time ........ 9

                        b)      The Union knew about the policy of non-compensation for
                                donning and doffing and entered a CBA that maintained the
                                *status quo* .................................................................................... 9

                        c)      Any claim by Plaintiffs that they are entitled to compensation
                                for time spent showering after their shifts is also barred by §
                                3(o). ............................................................................................. 11

        B.      Donning and doffing standard PPE is not compensable under the Portal-to-
                Portal Act ............................................................................................................. 13

C.      Plaintiffs' donning and doffing claims fail as a matter of law because they
        were not required to change clothes at work ......................................................... 14

D.      Relief requested ..................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Alcoa, Inc.*,
    822 F.Supp.2d 156 (N.D.N.Y. 2011) ...................................................................................15

*Allen v. McWane, Inc.*,
    593 F.3d 449 (5th Cir. 2010) .........................................................7, 8, 9, 10, 11, 13

*Anderson v. Cagle's, Inc.*,
    488 F.3d 945 (11th Cir. 2007) ........................................................6, 8, 9, 10, 12, 13

*Anderson v. Mount Clemens Pottery Co.*,
    328 U.S. 680 (1946), *superseded by statute* ...........................................................13

*Anderson v. Pilgrim's Pride Corp.*,
    147 F.Supp.2d 556 (E.D. Tex. 2001), *aff'd*, 44 Fed. Appx. 652 (5th Cir.2002)......................14

*Bamonte v. City of Mesa*,
    598 F.3d 1217 (9th Cir. 2010) ...................................................................................15

*Bejil v. Ethicon, Inc.*,
    269 F.3d 477 (5th Cir. 2001) .........................................................................7, 8, 12, 13

*Dager v. City of Phoenix*,
    380 Fed. Appx. 688 (9th Cir. 2010).............................................................................15

*Franklin v. Kellogg Co.*,
    619 F.3d 604 (6th Cir. 2010) .........................................................................................7, 9

*Gatewood v. Koch Foods of Miss., LLC*,
    569 F.Supp.2d 687 (S.D. Miss. 2008)..............................................8, 10, 11, 12, 13

*Gorman v. Consolidated Edison Corp.*,
    488 F.3d 586 (2d Cir. 2007)........................................................................................14

*Hays v. Monfort, Inc.*,
    160 F. Supp. 2d 746 (N.D. Tex. 2000) ..........................................................................7

*Isreal v. Raeford Farms of Louisiana, LLC*,
    784 F. Supp. 2d 653 (W.D. La. 2011).............................................................................9

*Musticchi v. City of Little Rock*,
    734 F.Supp.2d 621 (E.D. Ark. 2010) ..........................................................................15

*Reich v. N.Y. City Transit Auth.*,
  45 F.3d 646 (2d Cir.1995)...................................................................................13

*Salazar v. Butterball, LLC*,
  644 F.3d 1130 (10th Cir. 2011) ...............................................................8, 10, 12, 13

*Sandifer v. U.S. Steel Corp.*,
  134 S. Ct. 870, 187 L. Ed. 2d 729 (2014) ...............................................................6

*Sepulveda v. Allen Family Foods, Inc.*,
  591 F.3d 209 (4th Cir. 2009) ...................................................................................7

*Steelworkers v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960)...................................................................................................8

*Texas Util. Generating Div.*,
  92 LA 1308 ...............................................................................................................8

*Von Friewalde v. Boeing Aerospace Ops., Inc.*,
  339 Fed. Appx. 448 (5th Cir. 2009)........................................................................14

**Statutes**

29 C.F.R. § 790.7(g) ....................................................................................................13

29 U.S.C. § 203(o).................................................................................................6, 13

29 U.S.C. § 254(a) .......................................................................................................13

**Other Authorities**

*Wage & Hour Adv. Mem.* No. 2006-2 .........................................................................14

## I.    Introduction

Defendant Lion Elastomers LLC ("Lion") owns a plastics manufacturing plant in Port Neches, Texas.  Defendants ISP Synthetic Elastomers ("ISP") and Ashland Elastomers, LLC ("Ashland") have owned the plant in the past.  Plaintiff Michael Stuntz, a former employee at the plant, and Plaintiff Dwayne Newman, a current employee at the plant, seek alleged unpaid overtime for time spent donning and doffing Personal Protective Equipment ("PPE") before and after their shifts.   Special FLSA rules govern Plaintiffs' donning and doffing claims because they were represented by the Steelworkers Union Local 228 (the "Union").  The donning and doffing claims fail for a number of independent reasons, some of which are related to special FLSA rules that apply to employees represented by a union.

First, § 3(o) of the FLSA does not require pay for donning and doffing time where the Union has agreed, either explicitly or implicitly, to a practice of non-compensation for pre- and post-shift donning and doffing.  There had been an established practice of not paying employees for donning and doffing since at least 1990, and no collective bargaining agreement has ever afforded employees compensation for donning and doffing.  Moreover, the Union has never filed a grievance over the plant's longstanding practice of not paying employees for donning and doffing, which confirms that the labor agreement between the plant and the Union does not include employee compensation for donning and doffing.  Finally, in 2013, the Union ***expressly agreed*** to a timekeeping arrangement where employees would not be paid for donning and doffing before they clocked in or after they clocked out.  These undisputed facts entitle Lion to summary judgment on the donning and doffing claims.

Second, the Fifth Circuit has held that, under the Portal-to-Portal Act, donning and doffing the types of PPE at issue in this case are not compensable as a matter of law.

Third, it is undisputed that Plaintiffs had the option and ability to don and doff at home.  The Department of Labor has taken a longstanding position that donning and doffing is not compensable as a matter of law when employees have the option and ability to change at home.

For any of these reasons, Lion is entitled to summary judgment on Plaintiffs' FLSA claims.

## II.   Issues Presented

1.   Whether § 3(o) bars Plaintiffs' donning and doffing and claims as a matter of law because there was a practice of not compensating employees for changing clothes for a prolonged period of time.

2.   Whether § 3(o) bars Plaintiffs' donning and doffing claims as a matter of law because the Union knew that employees were not compensated for changing clothes before or after their shifts, and then entered a collective bargaining agreement that was silent on the issue.

3.   Whether § 3(o) bars Plaintiffs' donning and doffing claims as a matter of law because the Union expressly agreed in 2013 that employees would be compensated based on their punch times, which excluded time spent donning and doffing or showering before they clocked in or after they clocked out.

4.   Whether § 3(o) bars Plaintiffs' showering claims as a matter of law because employees have not received compensation for showering by custom or practice.

5.   Whether Plaintiffs' donning and doffing claims fail as a matter of law because the donning and doffing of basic PPE is not compensable as a matter of law in the Fifth Circuit.

6.   Whether Plaintiffs' donning and doffing claims fail as a matter of law because employees had the option and ability to change clothes at home.

### III.     Statement of Undisputed Material Facts

**A.     Plaintiffs' employment is governed by a collective bargaining agreement**

The Union is the collective bargaining representative for the Production Unit employees.  (Ex. A, Stuntz Dep. at 48:8-13; Ex. B, Newman Dep. at 21:12-20.)     Stuntz and Newman worked in the Production Unit at the plant, were members of the Union, and belonged to the Union's leadership committee.  (Ex. A, Stuntz Dep. at 190:21-23; 126; Ex. B, Newman Dep. at 21:12-20.)   The terms and conditions of the Production Unit employees' employment are governed by a Collective Bargaining Agreement ("CBA").  (Ex. A, Stuntz Dep. at 50: 9-19; Ex. B, Newman Dep. Ex. 12.)

**B.     No CBA has prescribed pay for donning and doffing**

Production Unit employees have been unionized since at least 1998.  (Ex. C, Lord Decl. Ex. 1.)  During that time, the Union has negotiated five CBAs on behalf of the Production Unit employees.  (*Id.* ¶ 11 and Exs. 1-5.)  The Union and the plant owner (whether Lion, Ashland, ISP, or their predecessors) have never agreed in a CBA that Production Unit employees are entitled to compensation for donning and doffing before or after their shifts.  (*Id.* ¶ 9 and Exs. 1-5; Ex. B, Newman Dep. at 103:23-105:24.)

The CBA in effect from 1998 until 2003 did not provide for any compensation for donning and doffing before or after their shifts.  (Ex. C, Lord Decl. Ex. 1.)  Nor did the CBA in effect from 2003 to 2006.  (*Id.* Ex. 2; Ex. B, Newman Dep. at 104:22-105:1.)  The CBAs in effect from 2006 to 2014 retained the *status quo* of non-compensation for donning and doffing.  (Ex. B, Newman Dep. at 104:22-105:22; Ex. C, Lord Decl. Exs. 3-4.)  The CBA negotiated in 2014 again maintained the *status quo* of non-compensation for donning and doffing.  (Ex. B, Newman Dep. at 106:25-108:8; Ex. C, Lord Decl. Ex. 5.)     Finally, in the most recent CBA, which became

effective in 2016, the Union continued to agree to the practice of non-compensation for donning and doffing.  (Ex. E, 2d Lord Decl. ¶ 3 and Ex. 1.)

**C.    There has been an actual practice of non-compensation for donning and doffing since at least 1990**

There has also been an actual practice of non-compensation for donning and doffing going back to at least 1990.  (Ex. D, Mosley Decl. ¶ 4.)  Even before 1990, there is no evidence that the plant *ever* had a practice of compensating employees for time spent donning and doffing before or after their shifts.  In short, for as long as anyone can remember, the plant has had a custom and practice of not compensating employees for donning and doffing before or after their shifts.

**D.    There was a policy of non-compensation for donning and doffing when the employees were paid according to "early shift relief"**

Historically, at the Union's request, Production Unit employees were paid according to a practice called "early shift relief."  (Dkt. # 26 ¶ 16.)  Under this arrangement, both an employee and his relief were paid for a full twelve-hour shift.  (Ex. C, Lord Decl. ¶ 6.)  If an employee's relief arrived at the work station before shift change, the employee being relieved could leave before his shift ended and was still paid for a full twelve-hour shift.  (*Id.*)  The employee who offered the early relief was paid for a twelve-hour shift and not his actual clock-in time.  (*Id.*)  Under "early shift relief," there was a custom and practice of not paying employees for donning and doffing PPE before or after their shifts.  (*Id.*)

**E.    The policy of non-compensation for donning and doffing continued after employees were paid based on clock punches**

On May 28, 2013, the Union filed a grievance with Ashland (the owner of the plant at the time) over "early shift relief," claiming that Production Unit employees should be paid based on their actual punch times.  (Ex. B, Newman Dep. Ex. 5.)  The Union's grievance over early shift relief had nothing to do with donning and doffing.  (Ex. B, Newman Dep. at 106:4-19.)  Ashland

then engaged in negotiations with the Union over the "early shift relief" practice.  (*Id*. at 164:1-12.)  The negotiations between Ashland and the Union culminated in a collectively-bargained agreement that modified how Ashland paid the employees:

- The Union and Ashland agreed to eliminate the "early shift relief" practice. Going forward, Ashland agreed to pay employees based on their punch times.

- The Union and Ashland agreed to locate the time clocks near the employees' work areas.  These time clocks, rather than the clocks at the security gate entrance, would be used to track the employees' work time.

- The Union and Ashland agreed to locate the time clocks *past* the locker room where employees could change clothes or shower before or after a shift, so if employees elected to change clothes or shower at work, they would do so before they clocked in or after they clocked out.

(Ex. C, Lord Decl. Ex. 6.)  By agreeing to the new location of the time clocks, the Union agreed that employees would not be paid for donning and doffing before or after their shifts.  (*Id*. ¶ 9 and Ex. 6.).  The Union has never filed a grievance over the location of the time clocks or the plant's long-standing practice of not compensating employees for changing clothes before or after their shifts.  (*Id*. ¶ 10; Ex. B, Newman Dep. at 106:20-24.)

### IV.    Procedural background

Stuntz filed this lawsuit on March 21, 2014 as an FLSA collective action.  (Dkt. #1.) Stuntz alleged that, when the "early shift relief" practice was in effect, he and other employees spent time donning and doffing PPE before and after their twelve-hour shifts.  (*Id*. ¶ 18.)  Stuntz also alleged that, after the elimination of "early shift relief," he and other class members spent time donning and doffing PPE before clocking in and after clocking out.  (*Id*. ¶ 17.)  Stuntz later filed an amended complaint adding state law claims for breach of contract, negligence, conversion, and fraud, and an individual FLSA retaliation claim.  (Dkt. # 26 ¶ 29.)

The Court conditionally certified the following FLSA class on June 26, 2015:

> All current and former employees of the Defendants who, (1) Have
> worked at the elastomers plant located in Port Neches, Texas at any
> time during the prior three (3) years, and who reported to and badged
> in the plant prior to the start of their pay period and either (1) donned
> the necessary PPE at the bathhouse, or (2) were already donned in
> the necessary PPE ready to begin work prior to the start of their pay
> period; and/or (2) All employees who remained at the plant after the
> end of their shift to doff prior to leaving the Plant.

(Dkt. # 32 at 9.)

The Court granted Defendants' motions for summary judgment on the state law claims. (Dkt. #101.)  Accordingly, the remaining claims in this lawsuit are (1) the conditionally certified FLSA overtime claims for donning and doffing, and (2) Stuntz's individual retaliation claim.  This motion addresses the FLSA overtime claims for the named plaintiffs and class members.

## V.   Argument and Authorities

### A.   Section 3(o) of the FLSA bars Plaintiffs' donning and doffing claims

Section 3(o) of the FLSA provides that time spent "changing clothes or washing at the beginning or end of each workday" is ***not compensable*** if the employer has not paid employees for these activities "by custom or practice under a bona fide collective-bargaining agreement."  29 U.S.C. § 203(o).   Congress enacted § 3(o) to prevent liability to employers when the employer and union had previously agreed, whether expressly in a collective bargaining agreement or impliedly through past practice, that the time spent changing clothes or showering was not compensable. *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 958-59 (11th Cir. 2007).

### 1.   Section 3(o) governs the types of pre-and post-shift activities for which Plaintiffs seek compensation

Plaintiffs seek compensation for donning and doffing steel-toe boots, fire-retardant clothing, gloves, hard hats, and safety glasses.  (Ex. A, Stuntz Depo 70:24-71:23.)  These items are indisputably "clothes" under § 3(o). *See e.g., Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 879,

187 L. Ed. 2d 729 (2014) (flame-retardant jackets, pants, hoods, hardhats, snoods, wristlets, work gloves, leggings, and metatarsal boots were "clothes" under § 203(o)); *Bejil v. Ethicon, Inc.*, 269 F.3d 477, 480 (5th Cir. 2001) (lab coats, head covers, and facial hair covers were "clothes" under § 3(o)); *Franklin v. Kellogg Co.*, 619 F.3d 604, 615 (6th Cir. 2010) (uniform, shoes, caps, ear plugs, hairnets, and goggles are "clothes" for purposes of § 3(o)); *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 215 (4th Cir. 2009) (shoes, smocks, aprons, gloves, sleeves, caps, ear plugs, hairnets, arm shields, and glasses are "clothes" for purposes of § 3(o)).  Additionally, to the extent Plaintiffs seek compensation for time spent showering after their shifts, showering is considered "washing" for purposes of § 3(o).  *Hays v. Monfort, Inc.*, 160 F. Supp. 2d 746, 748 (N.D. Tex. 2000).   Thus, § 3(o) governs the types of pre- and post-shift activities for which Plaintiffs seek compensation.

### 2.    The undisputed evidence establishes a "custom or practice" as a matter of law

This Court must next determine whether there was a "custom or practice" of not paying employees for donning and doffing clothes.  The Fifth Circuit has adopted a very lenient standard for an employer to establish a "custom or practice."  *Allen v. McWane, Inc.*, 593 F.3d 449, 457 (5th Cir. 2010).  The "custom or practice" does not need to be memorialized in the collective bargaining agreement or any other written document.  *Id*.   Moreover, the union and employer need not have even discussed the compensability of the activities in the past; instead, a "custom or practice" may be established by the union's acquiescence to a policy of non-compensation for changing clothes.  *Id*.

A "custom or practice" is established under § 3(o) where any of the following scenarios exist:

- A practice of non-compensation has been in effect for a prolonged period of time, even if the employer and union have not discussed compensation

for such activities during negotiations.  *Allen v. McWane, Inc.*, 593 F.3d at 457.

- The union is aware of the policy of non-compensation and agrees to a CBA that does not expressly afford compensation for donning and doffing, even if the employer and union have not discussed compensation for such activities during negotiations.  *Gatewood v. Koch Foods of Miss., LLC*, 569 F.Supp.2d 687, 701 (S.D. Miss. 2008); *Allen*, 593 F.3d at 457 (citing *Gatewood* with approval); *cf. Salazar v. Butterball, LLC*, 644 F.3d 1130, 1141 (10th Cir. 2011) ("We hold that, where a CBA is silent on the issue and there is no other agreement regarding donning and doffing pay, a custom or practice of non-compensation exists for § 203(o) purposes if there was an established practice of non-compensation prior to the execution of the CBA.  . . . Under such circumstances, union acquiescence can be inferred from acceptance of a CBA that leaves the status quo unchanged."); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 958-59 (11th Cir. 2007) (a policy of non-compensation "for clothes changing, written or unwritten, in force or effect at the time a CBA was executed satisfies § 203(o)'s requirement of a 'custom or practice under a bona fide' CBA.").

- The employer and union have discussed compensation for donning and doffing during negotiations and enter a CBA that does not afford compensation for donning and doffing.  *Bejil v. Ethicon, Inc.*, 269 F.3d at 480.

The breadth of scenarios where the Fifth Circuit recognizes a § 3(o) defense reflects the importance of the concept of "custom and past practice" in labor law.  Essentially, a past practice equates to the parties' binding agreement on a particular issue when the issue is not expressly addressed by the CBA. *See Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) (past practice "is equally a part of the collective bargaining agreement although not expressed in it."); *Texas Util. Generating Div.*, 92 LA 1308, 1312 (McDermott, 1989 ("In cases where the contract is completely silent with respect to a given activity, the presence of a well established practice, accepted or condoned by both parties, may constitute in effect, an unwritten principle on how a certain type of situation should be treated.").  Accordingly, an employer establishes its § 3(o) defense where the evidence indicates the union acquiesced to a practice of non-compensation for donning and doffing.

**a)** **There was a policy or practice of non-compensation for donning and doffing in effect for a prolonged period of time**

It is undisputed that a practice of non-compensation for donning and doffing existed for a prolonged period of time.  Prior to the elimination of "early shift relief," Ashland (and earlier, its predecessors) had a practice of not compensating Production Unit employees for donning and doffing PPE.  (Ex. C, Lord Decl. ¶ 5; Ex. D, Mosely Decl. ¶ 4.)  Plaintiff Newman himself admitted that, as long as employees have had to wear PPE, there has been a custom and practice of not paying employees for donning and doffing PPE.  (Ex. B, Newman Dep. at 104:8 -105:1).  This custom and practice goes back at least twenty-six years.  (Ex. D, Mosely Decl. ¶ 4.)

The undisputed evidence demonstrates that the plant has had a practice of not compensating employees for donning and doffing PPE for more than twenty years.  (Ex. B, Newman Dep. at 104:2-105:1; Ex. C, Lord Decl. ¶ 5; Ex. D, Mosely Decl. ¶ 4.)  Twenty years is a "prolonged period" as a matter of law.  *See Anderson*, 488 F.3d at 958–59 (granting summary judgment on § 3(o) defense where policy of non-compensation had been in place for at least ten years); *Franklin v. Kellogg Co.*, 619 F.3d at 617-18  (granting summary judgment on § 3(o) defense where policy of non-compensation had been in place for nineteen years); *Isreal v. Raeford Farms of Louisiana, LLC*, 784 F. Supp. 2d 653, 659 (W.D. La. 2011) (granting summary judgment on § 3(o) defense where policy of non-compensation had been in place for fifteen years).  Accordingly, § 3(o) bars Plaintiffs' donning and doffing claims as a matter of law because a practice of non-compensation has been in effect for a prolonged period of time.  *Allen v. McWane, Inc.*, 593 F.3d at 457.

**b)** **The Union knew about the policy of non-compensation for donning and doffing and entered a CBA that maintained the *status quo***

Additionally, even in the absence of a practice of non-compensation for a prolonged period of time, § 3(o) bars a donning and doffing claim where the union is aware of the policy of

non-compensation and agrees to a CBA that maintains the *status quo* of non-compensation. *Gatewood*, 569 F.Supp.2d at 701; *Allen*, 593 F.3d at 457 (citing *Gatewood* with approval); *Salazar v. Butterball, LLC*, 644 F.3d at 1141; *Anderson v. Cagle's, Inc.*, 488 F.3d at 958-59.   As the bargaining representative of the Production Unit employees, the Union has been aware that employees were not and are not paid for donning and doffing before or after their shifts.  (Ex. B., Newman Dep. at 104:2-7.)  Armed with this knowledge, the Union negotiated several CBAs over the past two decades, none of which afforded employees compensation for donning and doffing before or after their shifts.  (Ex. B, Newman Dep. at 105:6-24, 107:9-108:8; Ex. C, Lord Decl. Exs. 1-5.)

The Union's acquiescence to Lion's practice of non-compensation for donning and doffing is further reflected in the Union and Ashland agreement to eliminate "early shift relief." When the Union and Ashland agreed that employees would be paid based on clock punches rather than "early shift relief," the Union agreed to locate the time clocks closer to the employees' work stations and use these time clocks to track the employees' punch times.  (Ex. C, Lord Decl. ¶ 8 and Ex. 6.)  The new time clocks were located ***past*** the locker room area for changing clothes.  (*Id.* ¶ 9.)  Thus, if an employee elects to change clothes at the plant, he changes clothes before he clocks in and begins his compensable work time.  (*Id.* ¶ 9.)  By agreeing that Production Unit employees would be paid based on their time punches at the new time clocks, the Union and Ashland ***agreed*** that Production Unit employees ***would continue to not be paid*** for donning and doffing before they clock in or after they clock out.  (*Id.* ¶ 9.)

In fact, during the CBA negotiations that occurred shortly after Stuntz filed this lawsuit, the Union was aware that the company did not believe it was obligated to pay for donning and doffing of PPE as asserted in the lawsuit.  (Ex. B, Newman Dep. at 107:19-108:8.)  Yet, during

the CBA negotiations, the Union never attempted to negotiate for compensation for donning and doffing. (*Id*. at 107:12-108:8.) Even though the Union was aware of Lion's position on donning and doffing, and Ashland's position before it, the Union never tried to secure compensation for donning and doffing in the CBA. (*Id*. at 108:2-8.) Moreover, the Union has never filed a grievance over this practice of non-compensation, thus demonstrating the acquiescence of the Union to the company's continuation of the non-compensation policy. (Ex. C, Lord Decl. ¶ 10.)

The undisputed evidence demonstrates that the Union, being aware of the policy of non-compensation for donning and doffing, agreed to CBAs in 2003, 2006, 2010, 2014, and 2016 that did not afford employees compensation for donning and doffing. This demonstrates, as a matter of law, a "custom or practice" of non-compensation for donning and doffing. *Allen*, 593 F.3d at 457; *Gatewood*, 569 F.Supp.2d at 701. Accordingly, § 3(o) bars Plaintiffs' donning and doffing claims.

c)      **Any claim by Plaintiffs that they are entitled to compensation for time spent showering after their shifts is also barred by § 3(o).**

To the extent Plaintiffs seek compensation for post-shift showering, § 3(o) bars those claims as well. The 1998 CBA provided an extra $2 per hour for a limited group of bargaining unit employees when they worked in a particularly dirty area of the plant, because those employees would have to replace their uniforms more frequently. (Ex. C, Lord Decl. Ex. 1.) Even assuming for purposes of this motion only that these employees were paid for showing (which they were not), during the next round of CBA negotiations in 2003, the Union agreed to eliminate this extra pay. (Ex. C, Lord Decl. Ex. 2.) Since 2003, the Union and the company have maintained the *status quo* and not implemented any provision in the CBA that entitles employees to pay for time spent showering. (Ex. C, Lord Decl. Ex. 3-5.) Thus, Plaintiffs' showering claims are barred because the Union was aware of the policy of non-compensation for showering yet continued to

11

agree to CBAs that did not provide compensation for time spent showering.  This establishes a "custom or practice" as a matter of law.  *Bejil v. Ethicon, Inc.*, 269 F.3d at 480; *Salazar v. Butterball, LLC*, 644 F.3d at 1141; *Anderson v. Cagle's, Inc.*, 488 F.3d at 958-59; *Gatewood v. Koch Foods of Miss., LLC*, 569 F.Supp.2d at 701.

The "custom or practice" of not compensating employees for showering is further bolstered by the parties' negotiations in 2013 over "early shift relief."  When the Union and Ashland agreed that Ashland would begin to pay employees according to clock punches, the Union agreed to locate the time clocks near the employees' work stations.  (Ex. C, Lord Decl. ¶ 8 and Ex. 6.)  The new time clocks were located ***past*** the showering area.  (*Id*. ¶ 9.)  Thus, if an employee elects to shower at the plant after his shift, he does so after he clocks out.  (*Id*.)  By agreeing that Production Unit employees would be paid based on their time punches at the new time clocks, the Union and Ashland ***agreed*** that Production Unit employees ***would not be paid*** for showering after they clock out.  (*Id*.)

The parties' negotiations over the 2016 CBA further solidifies the "custom and practice" of not compensating employees for showering.  During these negotiations, the Union proposed that the CBA should include a provision requiring Lion to pay employees for post-shift showering.  (Ex. E, 2d Lord Decl. ¶ 4 and Ex. 2.)   Obviously, this proposal would have been unnecessary if a custom or practice of paying employee for post-shift showers already existed.  Lion rejected the Union's proposal and, as a result, the Union agreed to withdraw its request and continued to acquiesce to the long-standing practice of not paying employees for post-shift showering.  (*Id*. ¶¶ 4-5 and Exs. 2-3.)  The practice of non-compensation for showering since 2004, the Union's agreement to several CBAs since 2004 that did not afford compensation for showering, and the Union's presentation and withdrawal of its proposal that Lion pay employees for

showering all lead to one indisputable conclusion:     Lion and its predecessors have not paid

employees showering "by custom or practice under a bona fide collective-bargaining agreement."

29 U.S.C. § 203(o); *see also Allen v. McWane, Inc.*, 593 F.3d at 457; *Bejil v. Ethicon, Inc.*, 269

F.3d at 480; *Salazar v. Butterball, LLC*, 644 F.3d at 1141; *Anderson v. Cagle's, Inc.*, 488 F.3d at

958-59; *Gatewood v. Koch Foods of Miss., LLC*, 569 F.Supp.2d at 701.

**B.     Donning and doffing standard PPE is not compensable under the Portal-to-Portal Act**

Even setting Lion's § 3(o) defense aside, Plaintiffs' donning and doffing claims

still cannot survive summary judgment.   In a short-lived 1946 holding, the Supreme Court

construed the FLSA to require compensation for the time employees spent donning and doffing

aprons and overalls.   *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 691–93 (1946),

*superseded by statute*, Portal–to–Portal Act, 29 U.S.C. § 254(a).   In response to *Anderson*,

Congress enacted the Portal–to–Portal Act the following year.   The Portal-to-Portal Act provides

that employees are ***not*** entitled to compensation under the FLSA for "activities which are

preliminary to or postliminary" to their principal job activities.   29 U.S.C. § 254(a).   The Portal-

to-Portal Act's implementing regulations describe "changing clothes" and "washing up or

showering" as preliminary and postliminary activities covered by the Act and therefore excluded

as compensable time.   29 C.F.R. § 790.7(g).   The Portal-to-Portal Act overturned the *Anderson*

holding that required compensation for putting on aprons and overalls, and was intended to relieve

employers from liability for preliminary and postliminary activities, "most of them relatively

effortless, that were thought to fall outside the conventional expectations and customs of

compensation."   *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 649 (2d Cir.1995).

Relying on the Portal-to-Portal Act and its implementing regulations, the Fifth

Circuit has held that the donning and doffing of basic PPE such as safety glasses and hearing

protection is not compensable as a matter of law under the FLSA.  *Von Friewalde v. Boeing Aerospace Ops., Inc.*, 339 Fed. Appx. 448, 454 (5th Cir. 2009).  The plaintiffs in *Von Friewalde* were aircraft mechanics.  *Id*. at 451.  They sought compensation under the FLSA for, among other things, donning and doffing PPE.  *Id*. at 454.   The Fifth Circuit held that, even if the time spent donning and doffing was more than *de minimus*, **"donning and doffing of generic protection gear such as safety glasses and hearing protection, are in any event 'non-compensable, preliminary tasks' under the Portal-to-Portal Act."**  *Id*. (emphasis added; quoting *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007)).  Accordingly, the Fifth Circuit affirmed summary judgment in favor of the employer on the employees' donning and doffing claims.  *Id*.  *See also Gorman*, 488 F.3d at 594 ("The donning and doffing of a helmet, safety glasses and boots are relatively effortless, non-compensable, preliminary tasks."   Internal quotation omitted.); *Anderson v. Pilgrim's Pride Corp.*, 147 F.Supp.2d 556, 563 (E.D. Tex. 2001), *aff'd*, 44 Fed. Appx. 652 (5th Cir.2002) (donning and doffing of a hairnet, ear plugs, rubber boots, gloves, plastic sleeves, dust masks, and safety glasses were non-compensable preliminary and postliminary tasks as a matter of law).  The Fifth Circuit's *Von Friewalde* decision commands that Plaintiffs' donning and doffing claims are not compensable as a matter of law.

**C.**    **Plaintiffs' donning and doffing claims fail as a matter of law because they were not required to change clothes at work**

Finally, Plaintiffs' donning and doffing claims fail as a matter of law because it is undisputed that employees had the ***option*** of changing clothes at home.  The Department of Labor has taken the "longstanding position that if employees have the option and the ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant." *Wage & Hour Adv. Mem.* No. 2006-2 at 3 (May 31, 2006).  Consistent with the DOL's position, federal courts have routinely held that donning and doffing is not

compensable as a matter of law where the employees have the option and ability to put on the required clothing and gear at home.  *See Bamonte v. City of Mesa*, 598 F.3d 1217, 1232 (9th Cir. 2010) (police officers not entitled to compensation for donning and doffing uniform and accompanying gear because they had the option and ability to change at home); *Dager v. City of Phoenix*, 380 Fed. Appx. 688, 689 (9th Cir. 2010) (same); *Musticchi v. City of Little Rock*, 734 F.Supp.2d 621, 626 (E.D. Ark. 2010) (same); *Adams v. Alcoa, Inc.*, 822 F.Supp.2d 156, 164 (N.D.N.Y. 2011) ("it is undisputed that employees are not required to don and doff their PPE at [the plant].  Therefore, the Court finds that donning and doffing PPE at [the plant] are not indispensable to Plaintiffs' principal activities and are not compensable under the FLSA.")

Here, it is undisputed that Plaintiffs were not required to change clothes or shower at work.  (Ex. A, Stuntz Dep. at 77:3-11, 80:18-20; Ex. B, Newman Dep. at 96:1-15; Ex. C, Lord Decl. ¶ 9.)  Indeed, numerous employees at the plant elected to change clothes and/or shower at home.  (Ex. A, Stuntz Dep. at 80:18-24; Ex. B, Newman Dep. at 91:10-92:9; Ex. C, Lord Decl. ¶ 4.)  In fact, Stuntz and Newman themselves sometimes changed clothes and showered at home. (Ex. A, Stuntz Dep. at 73:21-24; Ex. B, Newman Dep. at 83:12-23, 84:22-25.)  Because the undisputed evidence demonstrates that employees had the option and ability to don and doff at home, Plaintiffs' claims fail as a matter of law.  *Bamonte*, 598 F.3d at 1232; *Dager*, 380 Fed. Appx. at 689; *Musticchi*, 734 F.Supp.2d at 626; *Adams v. Alcoa, Inc.*, 822 F.Supp.2d at 164.

**D.    Relief requested**

Lion respectfully requests that the Court grant its summary judgment motion on Plaintiffs' overtime claims because:

- § 3(o) bars Plaintiffs' claims as a matter of law because there was a practice of not compensating employees for changing clothes and showering for a prolonged period of time.

- § 3(o) bars Plaintiffs' claims as a matter of law because the Union knew that employees were not compensated for changing clothes or showering, and then entered CBAs that were silent on the issue.

- § 3(o) bars Plaintiffs' claims as a matter of law because the Union expressly agreed in 2013 that employees would be compensated based on their punch times, which excluded time spent donning and doffing or showering before they clocked in or after they clocked out.

- § 3(o) bars Plaintiffs' showering claim as a matter of law because the Union requested compensation for showering during negotiations, withdrew that request, and then entered a CBA did not afford compensation for showering.

- Plaintiffs' donning and doffing claims fail as a matter of law because the donning and doffing of basic PPE is not compensable as a matter of law in the Fifth Circuit.

- Plaintiffs' donning and doffing claims fail as a matter of law because employees had the option and ability to change clothes at home.

Respectfully submitted,

OF COUNSEL:
Jeff Barnes
State Bar No. 24045452
jbarnes@fisherphillips.com
Mayra Cuello
State Bar No. 24074096
mcuello@fisherphillips.com
Fisher & Phillips LLP
910 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 292-0150 Phone
(713) 292-0151 Fax

/s/ Teresa Valderrama
Teresa Valderrama
State Bar No. 24022500
Fisher & Phillips LLP
910 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 292-0150 Phone
(713) 292-0151 Fax
tvalderrama@fisherphillips.com

ATTORNEY-IN-CHARGE FOR
DEFENDANT LION ELASTOMERS LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of June 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the below-listed individuals:

John Werner
Mark Frasher
Reaud, Morgan & Quinn
801 Laurel Street
P.O. Box 26005
Beaumont, Texas 77720-6005

Jason W. Hilliard
DINSMORE & SHOHL LLP
255 E. Fifth Street, Suite 1900
Cincinnati, Ohio 45202

Bruce M. Partain
WELLS, PEYTON, GREENBURG & HUNT LLP
550 Fannin Street, 6th Floor
Beaumont, Texas 77701

/s/ Teresa Valderrama
Teresa Valderrama

17