IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MICHAEL DAVID STUNTZ, | § | |
| INDIVIDUALLY AND ON BEHALF | § | |
| OF ALL THOSE SIMILARLY | § | |
| SITUATED | § | |
| | § | |
| Plaintiffs | § | |
| VS | § | C.A. No. 1:14-CV-000173 |
| | § | (RC) |
| ASHLAND ELASTOMERS, LLC; | § | |
| ET AL | § | |
| | § | |
| Defendants | § | COLLECTIVE ACTION |
| | § | |

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE CHIEF UNITED STATES DISTRICT JUDGE:

COMES NOW NAMED PLAINTIFFS, MICHAEL DAVID STUNTZ, and DWAYNE NEWMAN, INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED, and file this Motion for Partial Summary Judgment requesting a Partial Summary Judgment that Defendants violated and continue to violate the Fair Labor Standards Act by failing to pay for compensable time occurring prior to and after the shift, which Defendants purposely do not record in hours worked. Defendants' management previously determined and agreed that the failure to pay Plaintiffs for the time in question violates the Fair Labor Standards Act ("FLSA") and Plaintiffs are entitled to back pay and liquidated damages under the FLSA.

# I.

## INTRODUCTION

1.     The Named Plaintiffs and Opt-In Plaintiffs have all been employed at the elastomers plant located in Port Neches, Texas ("the Plant"), which Defendants have each owned during the years covering the claims in the case.  The unpaid time at issue is often referred to as either "Relief Time" or "Early Relief" or "FLSA Window" and occurs before and after the paid shift.   During the Relief Time Plaintiffs are permitted and suffered to perform work activities that are compensable under the Fair Labor Standards Act ("FLSA"), among which include donning and doffing PPE, work meetings with co-workers, and receiving job assignments and instructions from foreman.  During this Relief Time Plaintiffs are expected to be ready to work.  These activities have occurred at all times thru the present during the Relief Time; however, the location of these "off the clock" activities and wait time has occurred at different locations depending on Defendants' unilateral placement of the time clocks used to record hours worked. The rights Plaintiffs seek to enforce in this case are guaranteed by the FLSA and may not be abridged or reduced by any contract, collectively bargained or otherwise. *Barrentine v. Arkansas-Best Freight Sys.,* 450 U.S. 728, 74-41 (1981); *Bernard v. IBP, Inc. of Neb.,* 154 F.3d 259, 264 (5th Cir. 1998) (plaintiffs' right to pursue a suit under the FLSA is completely independent from their rights under the CBA); *See also* 29 C.F.R. §541.4.   The summary judgment record includes, (1) the determinations and admissions of Defendants' management that the compensable work day includes the Relief Time, and (2) Defendants' purposeful exclusion of the

Relief Time/FLSA Window in "hours worked."  Each of these acts are violations of Plaintiffs' rights and protections guaranteed by the FLSA, which protections may not be abridged or otherwise reduced by any contract or collective bargaining agreement.  *Id.*

2.    In specific regards to PPE, all Plaintiffs were required to don PPE as one of their first work activities.  In response to Defendant's argument that the actual donning time is excluded under 29 U.S.C. 203(o), the record in this case is that the management team of both Defendants Ashland and Lion -- Scott Hardegree and Trudy Lord -- were aware that donning and doffing occurs during the Relief Time (among other activities and wait time), and determined that not paying for the activities was a violation of the FLSA, which determination was/is consistent with authorities holding that even donning and doffing PPE that may otherwise be considered "clothes" under 203(o) can still be considered a principal activity sufficient to start the "continuous work day." *See, infra.*  The summary judgment record includes evidence that the donning of PPE generally occurred simultaneously and/or in close proximity to the time Plaintiffs were engaging in other "off the clock" work activities (*i.e.,* meetings and receiving job assignments from shift foreman) and that donning and doffing PPE was/is part of the job and germane to the job. Specifically, Scott Hardegree and Trudy Lord, both of whom have been senior management for Ashland and Lion, previously determined that Plaintiffs' activities occurring during the Early Relief/FLSA Window are compensable under the FLSA and paid Plaintiffs back wages and liquidated damages for the 3-year period

3

prescribed by the FLSA.  Accordingly, Plaintiffs seek partial summary judgment that the activities performed during the Early Relief/FLSA Window are compensable.

3.    Separate from not paying Plaintiffs for the Relief Time work, Defendants -- through Hardegree and Lord -- purposely relocated the time clocks to avoid recording the Relief Time work in "hours worked" which violates the FLSA's requirement that Defendant accurately records hours worked.  *See,* 29 U.S.C. §211; 29 C.F.R. §516.2(7).  Defendants' past and continued placement of the time clocks purposely carves out the Relief Time activities from being recorded in hours worked in "violation of the FLSA."

## II.
## STATEMENT OF THE ISSUES

4.    Are the work activities Plaintiffs performed, and continue to perform during the Relief/FLSA Window compensable under the FLSA, when Defendants have admitted the activities are compensable under the FLSA.

5.    Did Defendants' relocation of the time clocks convert the Relief/FLSA Window activities to "non-work" time under the FLSA.

## III.
## STATEMENT OF UNDISPUTED FACTS

6.    The corporate representative for Defendant Ashland Elastomers, LLC ("Ashland"), Julie Hopkins,[1] confirmed that Ashland acquired the elastomers Plant from Defendant ISP Synthetic Elastomers ("ISP") around August 2011.  "Exhibit A,"

---

[1] Julie Hopkins is Senior Group Counsel for labor, employment and litigation for Ashland including oversight of FLSA claims. *Exhibit A - Hopkins, P. 5, L. 21 – P. 6, L.8.*

Testimony of Julie Hopkins, P. 5, L. 13 – P. 6, L. 8; P. 15, L. 23 – 24; P. 15, L. 23 – P. 18, L. 6.  Ashland owned and operated the Plant thru December 1, 2014, when the Plant was acquired by Defendant Lion Elastomers, LLC ("Lion").  "Exhibit B," Testimony of Paula Sharp, P. 37, L. 5 – 37, L. 11.

7.      The paid shift for Plaintiffs is generally either (5:00am to 5:00pm) or (5:00am to 5:00pm).  *See*, "Exhibit C," Testimony of Dwayne Newman, P.44, L. 21 – 24; "Exhibit D," Testimony of Scott Hardegree,[2] P. 48, L. 13 -16.  At all times thru the present, Defendants ISP, Ashland and Lion permitted and/or suffered Plaintiffs and their co-workers to report to work up to 30 minutes prior to their shift, between 4:30 and 5:00 – whether that's 4:30am to 5:00am, or 4:30pm to 5:00pm, and stay after 5:00pm to doff PPE, shower and clean up.  *See,* "Exhibit E," Testimony of Trudy Lord – P. 406, L. 12 – P. 407, L. 16, Ex. 40 to the Deposition of Trudy Lord; "Exhibit D," Hardegree, P. 30, L. 5 – 9; P. 38, L. 5 – 9; P. 50, L. 8 – P. 52, L. 11.  This "off the clock" time is referred to herein as "Early Relief," "Relief Time," or "FLSA Window."

8.      Before September 2013, during the pre-shift Relief Time Plaintiffs would badge in the front gate, walk to the bathhouse, put on their PPE, have planning and safety meetings, discuss the status of the Plant before shift, meet with the person they were relieving and get any necessary instructions.  During the post-shift relief time they would doff PPE and clean up, and shower.  "Exhibit C," Newman, P. 346, L. 4 – P. 354, L. 25, Excerpt from Ex. 21 to Deposition of Dwayne Newman.  In specific regards to PPE, Newman testified that it would take him 5 to 10 minutes to

---

[2] Scott Hardegree was the Plant Manager for both Ashland and Lion.  *Exhibit D - Hardegree, P. 11, L. 13 – P. 12, L. 11.*

don his PPE on those days when the cleaning service has the Nomex coveralls ready and clean, but it would take longer (up to possibly 30 minutes) if the coveralls are not ready.  "Exhibit C," Newman, P. 52, L. 14 – P. 53, L. 20.  This process was completed in reverse at the end of the shift with doffing of PPE and showering on some days.  "Exhibit C," Newman, P. 81, L. 3 – P. 83, L. 3.  Scott Hardegree acknowledged employees' use of the Relief Time to don and doff PPE and shower.  "Exhibit D," Hardegree, P. 50, L. 8 – P. 52, L. 11.  In fact, Hardegree acknowledged that the chemicals Plaintiffs showered off post-shift are the same chemicals they showered off during the paid shift hours.  "Exhibit D," Hardegree, P. 51, L. 23 – P. 52, L. 11.  Obviously, the difference being that post shift showering was "off the clock" unpaid time, but cleaning during the shift was "on the clock" paid time.

9.     On May 28, 2013, the Named Plaintiffs and other Members of the Union Workers Committee submitted a Grievance Report to Trudy Lord.  *See*, "Exhibit F," Grievance Report dated May 28, 2016 – Lion Elastomers 003216.  The Report alleged a violation of the FLSA and any other state or federal law, statute or regulation dating back to 2002 and requested Alternative Dispute Resolution.  *See,* "Exhibit F."

10.    On June 3, 2013, Trudy Lord, as Human Resource Manager, responded to the Grievance Report stating as follows:

> **"alleged violation under FLSA is not a grievance under the collective bargaining agreement."**

"Exhibit G."  Ms. Lord directed the complaint be sent to the appropriate federal

office that administers the Act.  "Exhibit G," Response from Trudy Lord, Human Resources Manager.  Scott Hardegree confirmed that he would have likely been aware of Trudy Lord's response in real time.  "Exhibit D," Hardegree, P. 10, L. 1 - P. P. 12, L. 11;  P. 99, L. 1 – 20.  Consistent with the position that FLSA allegations are not under the CBA, Hardegree corroborated that the FLSA complaint was not handled pursuant to the CBA grievance procedure.  "Exhibit D," Hardegree, P. 99, L. 24 - P. 100, L. 24; P. 102, L. 3 - 9.

11.    At this juncture it is worth emphasizing that Scott Hardegree, Trudy Lord and Tom Rogers (the operations manager) served in their same/similar management positions for both Ashland and Lion.  Scott Hardegree remained plant manager, Tom Rogers remained operations manager, Trudy Lord remained head of human resources under Ashland and Lion.  "Exhibit B," Sharp, P. 37 L. 8 – 11; P. 48, L. 15 – 18; "Exhibit E," Lord, P. 39, L. 21 – P. 41, L. 12; "Exhibit D,"Hardegree, P. 11, L. 13 – P. 12, L. 11; P. 167, L. 18 – P. 169, L. 11; "Exhibit H," Testimony of Tom Rogers, P. 41, L. 9 -14; P. 47, L. 8 -14; P. 38, L. 11.

12.    On July 10, 2013, Ashland's management -- including Trudy Lord, Scott Hardegree and Tom Rogers -- met with the Named Plaintiffs and others to discuss the "FLSA Window."  Trudy Lord took notes of the meetings.  *See*, "Exhibit E," Testimony of Trudy Lord, P. 386, L. 23 - P. 387, L. 23, and Exhibit 36 to the Lord Deposition.  Among those present were Hardegree, Lord, Stuntz, Newman, Rogers, Joseph Wells and Richard "Hoot" Landry.  "Exhibit E," Lord, P. 387, L. 13 – 21, Ex. 36.  During his deposition, Scott Hardegree reviewed the meeting notes and

confirmed the notes covered the meetings leading up to the initial payout by Ashland. "Exhibit D," Hardegree, P. 22, L. 17 - P. 23, L. 3. The meeting includes the following relevant statements by Scott Hardegree:

   a.   **"I agree we owe back pay. The quantity of time is what is in question."** *See Lion Elastomers 003219 - 00320*

   b.   **"7.5 mins. -- gate to pipe rack**
        **x  2**
        **15:00"**

*See,* "Exhibit E," Lord, Exhibit 36, Lion Elastomers, 003218 - 003224. **To emphasize, the Plant Manager for both Ashland and Lion agreed that employees were owed back pay for the FLSA Window/Relief Time/Early Relief.** Referring to the 7.5 minutes, Hardegree initially testified that a round trip walk between the front gate and pipe rack was 15 minutes, which is obviously 9 minutes less than the 6 minutes Hardegree and Lord eventually determined and agreed employees were owed under the FLSA. "Exhibit D," Hardegree, P. 79, L. 1 – 17, "Exhibit E," Lord, Exhibit 36, Lion Elastomers 003224. To put the "time and location" into perspective when considering the 15 minute round trip walk between the front gate to the pipe rack, versus the 6 minute calculation Ashland determined represented the round trip walk occurring before and after the performance of "compensable work activities," attached to the deposition transcript of Trudy Lord is a map/diagram showing, (i) the Plant entrance, (ii) bathhouse, (iii) Densmore Building where the time clocks were relocated to, and (iv) the pipe rack. "Exhibit E," Lord, P. 396, L. 9 – P. 398, L. 7, Exhibit 37, Pg. 003230 – 003231. Notably, during the July 2013 meeting, Trudy Lord made a notation to call Richard Boheme at the Department of

Labor, which is consistent with the company's position that the FLSA violation and the meeting regarding the "FLSA Window" was not a CBA matter. "Exhibit E," Ex. 36, Pg. 3220. During this first meeting, there was much discussion concerning donning and doffing, and most of the notes reference PPE. "Exhibit E," Ex. 36, Pgs. 3218 – 3224. Despite any suggestion by Defendant, there was NO discussion concerning a potential relocation of the time clocks, or that the continuous compensable work day would not include the FLSA Window/Relief Time work activities. "Exhibit E," Ex. 36, Pgs. 3218 – 3224.

13.     On August 7, 2013, a follow up meeting was held, which again was recorded by the written notes of Trudy Lord. "Exhibit E," Lord, P. 407, L. 24 – P. 408, L. 4, Ex. 41, Pg. 003225 – 03226. At the conclusion of the second meeting, Plaintiffs were requesting payment of time encompassing donning and doffing. "Exhibit E," Ex. 41, Pg. 003226. Like the July meeting, at the meeting on August 7th, there was NO discussion concerning a potential relocation of the time clocks, or that the continuous compensable work day would not include the FLSA Window/Relief Time work activities. Hardegree did not recant his previous admission that Plaintiffs were owed back pay for the FLSA Window. "Exhibit E," Ex. 41, Pg. 003226.

14.     Just over one month later, Ashland – thru Trudy Lord – sent a letter to Plaintiffs and their co-workers advising as follows:

> "Ashland has determined that during your employment at the Port Neches Facility, you were not properly paid for 'relief time.' As such, the company has made the decision to back pay for the shifts that you worked and were not properly compensated for the time period of April 1, 2010 through your termination of employment.

Please find enclosed your check, calculation worksheet, and Q&A …

Best Regards,

Trudy Lord
Human Resources Manager"

*See*, "Exhibit I," Correspondence from Trudy Lord dated September 19, 2013 with Question & Answer.  According to Lord, the Question & Answer came from Ashland corporate, and particularly Deborah Click.  "Exhibit E," Lord, P. 416, L. 19 – P. 417, L. 7.  The undersigned deposed Deborah Click, who was/is Manager of Payroll Services for Ashland, Inc.  "Exhibit J," Testimony of Deborah Click, P. 11, L. 21 – 24; P. 15, L. 11 – 18.  Ms. Click confirmed that she and Julie Hopkins prepared the Question & Answer.  "Exhibit J," Click, P.  144, L.  20 – P. 146, L. 5; Exhibit 17 – Interrogatories to Ashland with Question & Answer.   That said, Julie Hopkins confirmed that she and Deborah Click prepared the Q & A on behalf of Ashland Elastomers, LLC based on the statements they received from Trudy Lord and Scott Hardegree that the employees were owed punch to punch minus 6 minutes, plus liquidated damages for 3 years.  "Exhibit A," Hopkins, P. 43, L. 24 – P. 45, L. 5; P. 54, L. 11 – P. 55, L. 22.  Scott Hardegree and Trudy Lord were NOT subject to the direction of Julie Hopkins or Deborah Click in determining employees was owed back pay and liquidated damages for three years.  "Exhibit A," Hopkins, P. 46, L. 21 – P. 47, L. 7.  That said, it is worth emphasizing that Julie Hopkins was the Senior Group Counsel for labor, employment and litigation for Ashland including oversight of FLSA claims.   "Exhibit A," Hopkins, P. 5, L. 21 – P. 6, L.8.   Thus the determination of a FLSA violation and corresponding payments of wages and

10

liquidated damages was done with the approval of Ashland's counsel and FLSA compliance officer.  The determination that employees were owed "punch to punch minus 6 minutes" came from Scott and Trudy, and Julie never confirmed the formula with the Union, but instead simply relied on direction from Scott and Trudy.  "Exhibit A," Hopkins, P. 54, L. 11 – P. 55, L. 11.  In Hopkin's words, "Trudy and Scott verified it to me that that's what was agreed to."  "Exhibit A," Hopkins, P. 55, L. 10 – 11.  The only verification for the "punch to punch minus 6 minutes" came from Scott and Trudy, and that was the basis for the Q&A.  "Exhibit A," Hopkins, P. 55, L. 2 – 22.

15.     By virtue of the letter dated September 19, 2013 with Question & Answer, Ashland advised Plaintiffs that it determined and agreed a violation of the FLSA had occurred and was paying Plaintiffs back pay, liquidated damages and going back the 3 years as provided for willful violations.  "Exhibit I," Q & A.  Ashland, through Hardegree and Lord, and with the approval of Hopkins, determined and agreed that Plaintiffs' compensable time started 3 minutes after they badged in the front gate and continued thru 3 minutes before they badged out at the front gate.  "Exhibit A," Hopkins, P. 54, L. 11 - P. 55, L. 22; "Exhibit I."  This timeframe encompasses the pre-shift time after Plaintiffs badged in the front gate and were donning PPE, meeting with their co-workers pre-shift regarding safety and planning, getting any necessary instructions from supervisors pre-shift, as well as post-shift doffing PPE, cleaning up and showering.  "Exhibit C," Testimony of Dwayne Newman, P. 52, L. 14 – P. 53, L. 20; P. 81, L. 3 – P. 83, L. 3; P. 346, L. 4 –

P. 354, L. 25, Excerpt from Ex. 21 to Deposition of Dwayne Newman; "Exhibit D," Hardegree, P. 50, L. 8 – P. 52, L. 11; "Exhibit E," Lord, Ex. 36 & 41 - Meeting Notes referring to donning and doffing; "Exhibit K," Declarations of Joseph Wells, Richard Landry, Micah Quincy Richard, and Joseph K. Colone Sr.   Scott Hardegree's testimony corroborates that the compensable Relief Time covers time Plaintiffs were donning PPE, conducting work meetings, and doffing PPE and showering. "Exhibit D," Hardegree, P. 50, L. 8 – P. 52, L. 11; P. 130, L. 6 - 11.   The PPE in this case included steel toed boots, Nomex, hearing protection, hard hat, safety glasses with side shields and gloves. "Exhibit D," Hardegree, P. 54, L. 12 – L. 25. Consistent with paying for the donning and doffing time, Tom Rogers, the former Operations Manager for both Ashland and Lion, testified that donning and doffing the PPE was "part of the job" and "germane" to the work.   "Exhibit H," Testimony of Tom Rogers, P. 38, L. 11; P. 72, L. 20 - P. 73, L. 10; P. 74, L. 8 -11; P. 76, L. 3 – P. 77, L. 14.

16.   In September 2013, Trudy Lord forwarded payments to current and former employees representing wages and liquidated damages under the FLSA and included a spreadsheet showing the workweeks and payments covered by the payout for each individual.   *See,* "Exhibit I."   The Question & Answer admits that not paying for the Relief Time violated the FLSA by including back pay, liquidated damages and going back 3 years.   "Exhibit I."   Included in Exhibit L are spreadsheets that accompanied the first round of payments issued to the Named Plaintiffs and other opt-in Plaintiffs for the first payout.   "Exhibit L," Spreadsheets

from First and Second Payout.

17.     At or around the same time Ashland determined and agreed to a violation of the FLSA regarding the Relief Time/FLSA Window, Defendant – without agreement from Plaintiffs or the Union -- relocated the time clocks from the front gate to the Densmore Building, effectively carving out a majority of the compensable time at issue, which, as discussed below, is in violation of the FLSA's recordkeeping requirements.   Plaintiffs did not agree to the relocation of the time clocks, and contend that the relocation of the time clocks were made to carve out time that is indisputably compensable under the FLSA and to avoid recording hours worked under the FLSA, all of which is a continued violation of the FLSA.   "Exhibit C," Newman, P. 193, L. 5 – 6; "Exhibit K," Declarations of Joseph Wells and Richard Landry; *See,* "Exhibit E," Lord, Ex. 36 & 41.   That said it should come as no surprise Scott Hardegree could not even recall a discussion with employees prior to simply deciding to relocate the time clocks and carve out the Relief Time/FLSA Window from hours worked.   "Exhibit D," Hardegree, P. 141, L. 22 – P. 142, L. 2. To the extent Defendant still takes the position there was an agreement with the Union to move the time clocks, Hardegree, who again was Defendants' Plant Manager, was (i) unaware of any written agreement, (ii) unaware of who any such alleged agreement was made with, and (iii) unaware of who was present when any such alleged agreement was made.   "Exhibit D," Hardegree, P. 92, L. 15 – 20.   When asked about the relocation of the time clocks, Julie Hopkins eventually concluded that because the Union never aggrieved the relocation of the time clocks they

agreed to it.  "Exhibit A," Hopkins, P. 76, L. 9 – P. 79, L. 13.  Specifically, Hopkins testifies as follows:

> In my experience, with this union, if they had not been in agreement with those changes they would have immediately grieved them, and they did not.  So if you want to talk about the entirety of the circumstances and -- you know, then our position is we reached an agreement and the best evidence of it is the fact that the union began working under that new setup without complaint.

"Exhibit A," Hopkins, P. 78, L. 21 – P. 79, L. 3.  As discussed below, Plaintiffs were not required to aggrieve Defendants' violations of 29 U.S.C 211, and Defendants are prohibited from limiting employees' rights to file a lawsuit to enforce and protect their rights under the FLSA – which right is expressly granted by 29 U.S.C. 216 (b).

18.    After moving the time clocks, Ashland and Lion continued the 30 minute "Early Relief" "FLSA Window" without compensating Plaintiffs.    "Exhibit D," Hardegree, P. 38, L. 5 – 9.  That is, after the time clocks were relocated to the Densmore Building, Plaintiffs continue to go to the bathhouse don PPE, meet with each other to plan their day discuss work, and get instructions from foreman prior to Plaintiffs badging in the relocated time clock.  *See*, "Exhibit C," Newman, P. 87, L. 22 – P. 88, L. 24; P. 344,L. 10 – P. 345, L. 11; "Exhibit M," Declarations of Rory Dean Bishop, Edward Barlow; "Exhibit K," Declarations of Micah Quincy Richard and  Joseph K. Colone Sr.    Thus, the activities Ashland, Hardegree and Lord determined were compensable ["Exhibit I"], were subsequently carved out of the "hours worked" by relocating the time clocks from the front gate.  Ironically, when Lion acquired the Plant, Trudy Lord became responsible for payroll and recording "hours worked."  "Exhibit B," Testimony of Paula Sharp, P. 20, L. 18 – P. 22, L. 11.

14

19.     Following the initial payouts by Ashland, Plaintiffs discovered the amounts had not been correctly calculated and that time punches had been altered. Accordingly, on September 24, 2013, Plaintiffs sent a letter to Scott Hardegree advising that if the company did not make the correct payments, they would go to the Department of Department of Labor.  *See,* "Exhibit N," Letter of September 24, 2013.  This statement that Plaintiffs would go to the Department of Labor further demonstrates that Trudy Lord and Scott Hardegree never altered their position that the FLSA violation was not under the CBA.  *See,* "Exhibit N," Letter of September 24, 2013.

20.     Following receipt of the letter of September 2013, Ashland sent employees a second payment to try and pay for the FLSA violation, including additional wages and penalty.  "Exhibit A," Ex. 28 to deposition of Julie Hopkins.

21.     Plaintiffs filed this lawsuit in March 2014.  Defendant Lion acquired the Plant on December 1, 2014, and to this day Plaintiffs are permitted and suffered to perform most all of the same work activities during the Relief Time, which Defendants -- through Hardegree and Lord -- previously determined and agreed are compensable under the FLSA, including but not necessarily limited to donning and doffing PPE, meetings with co-workers, and getting assignments from foreman. Additionally, any wait time that occurred during the compensable Relief Time/FLSA Window -- within the punch to punch minus 6 minutes -- is equally compensable under the FLSA thru the present.

**IV.**
**Argument and Authorities**

**A.      Standard for Summary Judgment**

22.      "Summary judgment is appropriate [if the summary judgment evidence shows] 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mello v. Sara Lee Corp.*, 431 F.3d 334, 335 (5th Cir. 2005) (quoting FED. R. CIV. P. 56).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).  Where "the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *McKee v. CBF Corp.*, 299 Fed. App'x 426, 428 (5th Cir. 2008) (citing Celotex Corp., 477 U.S. at 331).  And while the party moving for summary judgment must demonstrate the absence of a genuine of material fact, it does not need to negate the elements of the nonmovant's claims or defenses.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  To overcome summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *see also, Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007) (nonmoving party must identify specific evidence in the record and articulate how that evidence supports its claim or defense).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by

unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (*quoting Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

**B.    The FLSA Requires Employers to Pay Overtime Compensation for all Work Over 40 Hours in a Workweek, and Prescribes Specific Damages and Limitations Periods When Employers  Violate the FLSA**

23.    The FLSA was enacted for the purpose of protecting all covered workers from substandard wages and oppressive working hours.  *See Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 717-18 (E.D. La. 2008) *citing Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981); 29 U.S.C. §202(a).  The FLSA mandates that employers pay overtime compensation for nonexempt employees.  *Rainey v. McWane, Inc.*, 314 Fed. Appx. 693, 694 (5th Cir. Mar. 12, 2009), *citing* 29 U.S.C. §207(a).  Specifically, Section 207 (a)(1) requires an employer to pay overtime compensation (at a rate of one and one-half times the regular rate of pay) to an employee after the employee has worked over 40 hours in one week.  *Thibodeaux v. Executive Jet Intern., Inc.*, 328 F.3d 742, 749 (5th Cir. 2003); 29 U.S.C. §207 (a)(1).  Separately, §216(b) expressly authorizes the affected employees to file an action in court and prescribes the damages and relief employees are entitled to receive for violations of §207 of the FLSA.  Section 216 (b) provides as follows:

> Any employer who violates the provisions of section ... 207 shall be liable to the employee or employees affected in the amount of their ... unpaid overtime compensation, ... , and in an additional equal amount as liquidated damages. ... An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of

> competent jurisdiction by any one or more employees for and in behalf
> of himself or themselves and other employees similarly situated. ... The
> court in such action shall, in addition to any judgment awarded to the
> plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by
> the defendant, and costs of the action…

29 U.S.C. § 216(b).  To overcome imposition of the liquidated damage penalty the

burden – "which is a substantial burden" – rests with the employer to prove it acted

in good faith and had reasonable grounds to believe its pay practices complied with

the FLSA.  *See Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003);

*Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998); 29 U.S.C. § 260.  If a

violation of the FLSA was "not" willful, then a two-year statute of limitations

applies.  *Singer,* 324 F.3d at 821; 29 U.S.C. § 255(a).  However, if the violation was

willful, a three-year statute of limitations applies, meaning that employees can

collect three years of unpaid wages and/or overtime compensation.  *Singer,* 324 F.3d

at 821; 29 U.S.C. § 255(a).  A violation is "willful" if the employer either "knew or

showed reckless disregard for whether its conduct was prohibited by the statute."

*Singer,* 324 F.3d at 822 *citing Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994)

(quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 100 L. Ed. 2d 115,

108 S. Ct. 1677 (1988)).  Here, Defendants' management – Hardegree and Lord –

with the approval of Ashland's Senior Labor counsel (Hopkins), expressly

determined that (1) a violation of the FLSA occurred when employees were not paid

for the Relief Time, (2) employees were entitled to back pay, (3) employees were

entitled to liquidated damages, and (4) employees were entitled to application of the

three year limitations period.  "Exhibit I."  In fact, when the initial calculations

were not correct, Defendants management issued a second payment under the FLSA representing wages in liquidated damage penalties.  "Exhibit A," Testimony of Julie Hopkins, P. 82, L. 8 – L. 20, Ex. 28 to deposition of Julie Hopkins.

### C.   Compensable Time Under the FLSA Encompasses Activities that Qualify as "Integral and Indispensable," and/or that Occur During the "Continuous Work Day"

24.   It is well settled that, "an employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation."  *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) quoting *Forrester v. Roth's I.G.A., Inc.*, 646 F.2d 413, 414 (9th Cir 1981) ([e]mploy' includes to suffer or permit to work" "[T]he words 'suffer' and 'permit' as used in the statute mean 'with the knowledge of the employer'" (citation omitted).  Thus an employer who knows or should have known that an employee is or was working overtime must comply with the provisions of §207).  *See also*, 29 CFR 785.11, 785.13, which state as follows:

> 29 CFR § 785.11 General.
>
> Work not requested but suffered or permitted is work time.   For example, an employee may voluntarily continue to work at the end of the shift.   He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records.   The reason is immaterial.   The employer knows or has reason to believe that he is continuing to work and the time is working time.   (*Handler v. Thrasher*, 191, F. 2d 120 (C.A. 10, 1951); *Republican Publishing Co. v. American Newspaper Guild*, 172 F. 2d 943 (C.A. 1, 1949; *Kappler v. Republic Pictures Corp.*, 59 F. Supp. 112 (S.D. Iowa 1945), *aff'd* 151 F. 2d 543 (C.A. 8, 1945); 327 U.S. 757 (1946); *Hogue v. National Automotive Parts Ass'n.* 87 F. Supp. 816 (E.D. Mich. 1949); *Barker v. Georgia Power & Light Co.*, 2

W.H. Cases 486; 5 CCH Labor Cases, para. 61,095 (M.D. Ga. 1942); *Steger v. Beard & Stone Electric Co., Inc.*, 1 W.H. Cases 593; 4 Labor Cases 60,643 (N.D. Texas, 1941)).

29 CFR § 785.13 Duty of management.

In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed.  It cannot sit back and accept the benefits without compensating for them.  The mere promulgation of a rule against such work is not enough.  Management has the power to enforce the rule and must make every effort to do so.

25.   Addressing what is meant by the term "work," the Court in *Armour & Co. v. Wantock*, 323 U.S. 126 (1944), clarified that "exertion" was not in fact necessary for an activity to constitute "work" under the FLSA.  To the contrary, in *Armour*, the Court recognized that "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen."  *Id.*, at 133; *Karr v. City of Beaumont*, 950 F.Supp. 2d 1317, 1322 (E.D. Tex. 1997) ("Work" encompasses mental exertion that is not burdensome and is controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.)  In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), the Court defined "the statutory workweek" to "includ[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace."  *Id.*, at 690- 691.  Following *Anderson*, Congress passed the Portal to Portal Act of 1947 ("PPA").  The PPA amended the FLSA to provide that the FLSA does not require employers to compensate for (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are

preliminary to or postliminary to said principal activity or activities. *See* 29 U.S.C. §254(a) (1).

26.    In *Steiner v. Mitchell*, the Supreme Court determined that preliminary or postliminary activities are compensable if they are not specifically excluded under Section 254(a)(1) and are "an integral and indispensable part of the principal activities for which covered workmen are employed." *Steiner*, 350 U.S. 247, 76 S. Ct. 330, 335, 100 L. Ed. 267 (1956)).  The Supreme Court has identified several activities that satisfy the "integral and indispensable" test, including time spent showering and changing by workers at a battery plant due to the toxicity of the chemicals there and time meatpacker employees spent sharpening knives. *See Steiner; Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 518, 190 L. Ed. 2d 410 (2014) (*citing Steiner*, 350 U.S. at 249, 251; *Mitchell v. King Packing Co.*, 350 U.S. 260, 262, 76 S. Ct. 337, 100 L. Ed. 282 (1956)).  In *Integrity Staffing,* the Court cited to long standing federal regulations as examples of activities that would qualify as "integral and indispensable," among which includes "clothes changing" by chemical workers. *Integrity Staffing,* 135 S. Ct. 517:

> The Department of Labor's regulations are consistent with this approach. *See*, 29 CFR §790.8(b) (2013) "The term 'principal activities' includes all activities which are an integral part of a principal activity"); §790.8(c) ("Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance.")   As an illustration, those regulations explain that the time spent by an employee in a chemical plant changing clothes would be compensable if he "c[ould not] perform his principal activities without putting on certain clothes" but would not be compensable if "changing clothes [were] merely a convenience to the employee and not directly related to his principal activities." *See*, §790.8(c).

*Id.* In *IBP, Inc. v. Alvarez,* 546 U.S. 21, 126 S. Ct. 514 (2005) the Court confirmed that the donning and doffing of the protective clothing involved in *Steiner* can qualify as a principal activity.   *Id.,* at 521.   The *Alvarez* Court also expressly recognized the continuous workday doctrine as follows:

> Other than its express exceptions for travel to and from the location of the employee's "principal activity," and for activities that are preliminary or postliminary to that principal activity, the Portal-to-Portal Act does not purport to change this Court's earlier descriptions of the terms "work" and "workweek," or to define the term "workday." A regulation promulgated by the Secretary of Labor shortly after its enactment concluded that the statute had no effect on the computation of hours that are worked "within" the workday.  That regulation states: "[T]o the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday, the provisions of [§4] have no application."  29 CFR §790.6(a) (2005).  Similarly, consistent with our prior decisions interpreting the FLSA, the Department of Labor has adopted the continuous workday rule, which means that the "workday" is generally defined as "the period between the commencement and completion on the same workday of an employee's principal activity or activities."  §790.6(b).

*Alvarez,* 126 S. Ct. at 520-21.

27.    For purposes of the record here, Defendants' management – Hardegree and Lord-- determined that the continuous work day included, at the least, punch to punch minus 6 minutes.   This is the same timeframe Plaintiffs have, at all times been permitted and/or suffered to donn/doff PPE, conduct work meetings and discussions, and receive assignments from foreman.  As discussed below, Defendant may not avoid paying employees for activities that were otherwise determined to be compensable work, or that fall within the continuous work day.   The FLSA violations made the basis of Exhibit I continue thru the present as demonstrated by

the above referenced testimony of Plaintiff Newman and Declarations of Plaintiffs, as well as the testimony of Defendants Hardegree and Lord expressly acknowledging that employees are permitted to perform the same activities previously determined to be compensable work under the FLSA.

      1.    **Defenses that Exclude the Actual Time Spent Donning/Doffing -- Such as 29 U.S.C. 203(o) or the De Minimis Doctrine, Do Not Preclude the Donning/Doffing from Being Integral and Indispensable to Define the Continuous Work Day, or Otherwise Affect Activities Occurring Simultaneous or After Donning**

28.    Applying the "continuous work day" regulation to a set of facts that included employees donning and doffing otherwise generic PPE and showering, the *Alvarez* Court held as follows:

> … any activity that is "integral and indispensable" to a "principal activity" is itself a "principal activity" under §4(a) of the Portal-to-Portal Act. Moreover, during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of that provision, and as a result is covered by the FLSA.

*Id.,* at 525. Relying on *Alvarez,* the Court in *Gatewood v. Koch Foods of Miss.,* LLC, 569 F. Supp. 2d 687 (S.D. Miss. 2008) held that while the time spent donning and doffing protective clothing may not itself be compensable time based on a custom or practice defense under §203(o), the donning/doffing activities may still be integral and indispensable so as to define the start and stop of the continuous work day, and in any event will not affect the compensability of activities that occur immediately after the donning. *Id.,* at 702 *citing Alvarez,* 546 U.S. at 34 (Although the statute precludes recovery for time spent washing and "changing clothes," it does not affect

the fact that these activities could be the first "integral and indispensable" act that triggers the start of the continuous workday rule for subsequent activities that are not covered by §203(o), such as post-donning sanitation and travel time.)   In *Andrako v. United States Steel Corp.,* 632 F. Supp. 2d 938 (W.D. Penn. 2009), the Court followed the above holding in *Gatewood* in a case involving the Steelworkers Union and a 203(o) defense.   Citing to *Gatewood, Alvarez,* and one of the cases made the subject of the *Alvarez* appeal -- *Tum v. Barber Foods, Inc.*, 360 F.3d 274, 278-79 (1st Cir. 2004)[3] -- the *Andrako* Court held as follows:

> After careful review of the statute, the case law, and the arguments of the parties, I agree with Plaintiffs, as well as the courts in *Gatewood* and *Figas*, that the Portal-to-Portal Act does not preclude compensation for the post-donning/pre-doffing walking time in this case.   Section 203(o) relates to the compensability of time spent donning, doffing, and washing in the collective-bargaining process.   It does not render such time any more or less integral or indispensable to an employee's job.   As the court in *Gatewood* explained:
>
> > Although the statute precludes recovery for time spent washing and "changing clothes," it does not affect the fact that these activities could be the first "integral and indispensable" act that triggers the start of the continuous workday rule for subsequent activities that are not covered by §203(o), such as post-donning sanitation and travel time.
>
> 569 F. Supp.2d at 702 n. 31.  Like the *Gatewood* court and Judge Cercone in *Figas*,
>
> I am not convinced that §203(o) changes the "principal" nature of donning and doffing activities, or that "principal" activities somehow become "preliminary" or "postliminary" under the Portal Act simply because they are rendered noncompensable by a collective-bargaining agreement in accordance with §203(o).   A determination to the

---

[3]   The *Tum* case had determined that the actual time spent donning and doffing was de minimis; however, that fact did not preclude a finding that the donning/doffing could still be found to qualify as an integral and indispensable activity.

contrary would expand §203(o)'s exclusion beyond donning, doffing and washing time to include post-donning and pre-doffing travel time, which is not mentioned therein. *Figas*, 2008 U.S. Dist. LEXIS 87199, 2008 WL 4170043, at *20.

This reading of Section 203(o) is consistent with the Supreme Court's decision in *Alvarez*. In *Tum v. Barber Foods, Inc.*, one of the cases before the Supreme Court in Alvarez, the jury had found that otherwise "integral and indispensable" donning and doffing time was not compensable under the *de minimis* doctrine." *See Alvarez*, 546 U.S. at 38-39 (explaining Tum's procedural history); see also *Tum v. Barber Foods, Inc.*, 360 F.3d 274, 278-79 (1st Cir. 2004), *rev'd on other grounds sub nom. Alvarez*, 546 U.S. 21, 126 S. Ct. 514, 163 L. Ed. 2d 288; *De Asencio*, 500 F.3d at 370 n.9. Notwithstanding this fact, the Supreme Court firmly held that the employees' post-donning and pre-doffing walking time in *Tum* was part of the continuous workday and, therefore, the Portal-to-Portal Act did not apply to such time. *Alvarez*, 546 U.S. at 39.

*Id,* at 413. *See Figas v Horsehead*, 2008 U.S. Dist. LEXIS 87199, 2008 WL 4170043, at *20 (W.D. Penn. 2008) ("activities rendered noncompensable under §203(o) by a collective-bargaining agreement can nevertheless mark the *beginning* and the *end* of a continuous workday for purposed of the Portal Act."). In *Frankin v. Kellogg*, 619 F.3d 604 (6th Cir. 2010), the Sixth Circuit adopted the holdings from *Gatewood* and *Andrako,* in analyzing the impact of a 203(o) defense to the compensability of donning and doffing protective gear. Discussing the divergent view among courts, the *Franklin* Court held:

We agree with the courts that have taken the position that compensability under §203(o) is unrelated to whether an activity is a "principal activity." Accordingly, we must consider whether time spent donning and doffing the standard equipment and uniform is integral and indispensable to Franklin's job.

*Id.,* at 619. Finally, the Department of Labor, Wage & Hour Division issued Administrator's Interpretation No. 2010-2 which adopted the above authorities

among others finding that "Section 3 (o) Clothes Changing Can be a Principal Activity."  *See* U.S. Dep't of Labor, Opinion Letter, 2010 DOL WH LEXIS 2, 2010 WL 2468195, at 4 (June 16, 2010) (Consistent with the weight of authority, it is the Administrator's interpretation that clothes changing covered by §203(o) may be a principal activity.  Where that is the case, subsequent activities, including walking and waiting, are compensable.  The Administrator issues this interpretation to assist employees and employers in all industries to better understand the scope of the §203(o) exemption.).[4]

## D.   Defendants Ashland and Lion Violated, and Remain in Violation, of the FLSA Recordkeeping Requirements.

29.    The FLSA and the regulations promulgated pursuant to the FLSA require employers to keep records of, among other things, wages and hours worked.  29 U.S.C. §211(c); 29 C.F.R. §516.2(a)(6)-(7).  The Supreme Court has held that when a defendant-employer fails to keep accurate records, plaintiff-employees may recover unpaid wages by proving that they "in fact performed work for which [they were] improperly compensated and . . .[and by] produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946).  Thus, when an employer does not keep adequate time records, a

---

[4] The regulations and the clarifications of regulations by the DOL are entitled to deference unless they are unreasonable.  *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's [*875] answer is based on a permissible construction of the statute."); *Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)(holding that the DOL's interpretation of a FLSA regulation is "controlling unless 'plainly erroneous or inconsistent with the regulation.'"), *quoting Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359, 109 S. Ct. 1835, 104 L. Ed. 2d 351 (1989).

plaintiff may satisfy his burden by showing an approximation of his work hours.  *Id.* at 688.   If the defendant fails to rebut the plaintiff's evidence, the plaintiff's recollection and estimates of hours are presumed to be correct. *Id.* at 687-88.  *See Ford v. Houston Indep. Sch. Dist.,* 97 F. Supp. 3d 866 (S.D. Tex. 2015):

> 'It is . . . a fundamental precept of the FLSA that an employee should not be denied [recovery] because proof of the number of hours worked is inexact [**11] or not perfectly accurate.'"). [citations omitted].  "A plaintiff need not 'prove each hour of overtime with unerring accuracy or certainty.'"  *Prince v. MND Hospitality, Inc.*, 2009 U.S. Dist. LEXIS 61637, 2009 WL 2170042 *6 (S.D. Tex. July 20, 2009).  "In the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct."  *Id., quoting Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071, 2009 U.S. Dist. LEXIS 12963, 2009 WL 289653, *3 (S.D.N.Y. Jan. 30, 2009) (finding plaintiffs' initial burden was satisfied by affidavits based on the plaintiffs' recollection describing the time spent performing various tasks for which they did not receive overtime compensation).  Evidence can include plaintiff's testimony as to when and how many overtime hours he worked, plaintiff's affidavit to such, etc.  *Prince*, 2009 U.S. Dist. LEXIS 61637, 2009 WL 2170042, at *6.

*Id.,* at 873.   Here, Defendants' management – Hardegree and Lord – arbitrarily placed the time clocks at a location to carve out the compensable Relief Time/FLSA Window from the continuous compensable work day.   *See,* "Exhibit O." Specifically, Defendants produced "Exhibit O" titled "Agenda" which identified Trudy Lord and Scott Hardegree as the individuals who came up with the idea to relocate the time clocks. The Agenda provides as follows:

> Ray has been working with David Gleisner at Port Neches.  He is the IT support for the plant and worked with Trudy and Scott to come with the arrangement they believe works.  I will attach the diagram that **[THEY]** sent us.  Basically, **[THEY]** **[emphasis added]** want to turn the clocks at the gate to access only. Ray and I agree with that approach. …. This will then require (9) new "timeclocks" to be added inside the facility.

*See,* "Exhibit O."  Comparing, (1) the above statement that David Gleisner Trudy Lord and Scott Hardegree had prepared a diagram for relocating the timeclocks from the front gate, with (2) the actual diagram attached to Trudy's deposition at Ex. 37 (*See,* "Exhibit E," Ex. 37), there can be no credible doubt that Defendants' Management – Trudy Lord and Scott Hardegree – are the individuals who concocted the idea to carve out the Relief Time/FLSA Window from hours worked, which is a violation of 29 U.S.C. 211; 29 C.F.R. 516.2.  Notably, none of the clocks on the diagram are located at the Pipe Rack, and there is no mention of the Pipe Rack in David Gleisner's email to Trudy Lord.  *See,* "Exhibit E," Ex. 37.  Likewise, there is mention of the Pipe Rack in "Exhibit O."  This evidence is consistent with, (1) the fact there is no mention of moving the time clocks in the meetings of July and August 2013, (2) the denial by Dwayne Newman, Joseph Wells, and Richard Landry of any agreement to move the time clocks, and (3) Hardegree's inability to recall who allegedly entered into any agreement or and related discussions.

**E.** **Defendant is Prohibited from Relying on a Collective Bargaining Agreement to Abridge Plaintiffs' Rights to Maintain this Action to Recover Unpaid Wages, Liquidated Damages and Relief Under the FLSA.**

30.   In *Barrentine,* the Supreme Court emphasized the importance of preserving employees' protections and rights vested by the FLSA from improper use of collective bargaining agreements and contracts as follows:

> This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act.  Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate.  *Brooklyn*

*Savings Bank v. O'Neil*, 324 U.S. 697, 707 [***654] (1945); see *D. A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114-116 (1946); *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 42 (1944); *Overnight Motor Transportation Co. v. Missel, supra,* at 577; *see* 29 CFR § 785.8 (1974). Moreover, we have held that congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement. See, *e. g., Martino v. Michigan Window Cleaning Co.*, 327 U.S. 173, 177-178 (1946); *Walling v. Harnischfeger Corp.*, 325 U.S. 427, 430-432 (1945); *Jewell Ridge Coal Corp. v. Mine Workers*, 325 U.S. 161, 166-167, 170 (1945). As we stated in *Tennessee Coal, Iron* [****26] *and R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602-603 (1944) (footnote omitted):

> "The Fair Labor Standards Act was not designed to codify or perpetuate [industry] customs and contracts. . . . Congress intended, instead, to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act. Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights."

*Barrentine v. Arkansas-Best Freight Sys.,* 450 U.S. 728, 74-41 (1981). *See also* 29 C.F.R. §541.4; Other laws and collective bargaining agreements.

> "The Fair Labor Standards Act provides minimum standards that may be exceeded, but cannot be waived or reduced …, collective bargaining agreements cannot waive or reduce the Act's protections…"

Following *Barrentine,* the Fifth Circuit in *Bernard v. IBP, Inc.,* 154 F.3d 259 (5th Cir. 1998) held that plaintiffs' who were subject to a collective bargaining agreement had the absolute right to pursue a suit under the FLSA, completely independent from their rights under the CBA. *Id.,* at 263-64.; *Martin v. Spring Break 83 Prods.,* LLC, 688 F.3d 247, 257 (5th Cir. 2012) (We reiterate that FLSA substantive rights may not be waived in the collective bargaining process,…);

See also, Collins v. Sanderson Farms, 568 F. Supp.2d 714 (E.D. La. 2008) (The provisions of the statute are mandatory, and not subject to negotiation and bargaining between employers and employees. [citations omitted].  Under Section 16(b), an employer who Violates Section 206 or 207 is liable to the employee or employees affected in the amount of their unpaid minimum or overtime compensation, and for an additional equal amount as liquidated damages.)  Id., at 718.

31.    In sum, the collective bargaining agreement for the Plant does not impair Plaintiffs' rights to recover for unpaid work and time arising during the continuous work day, which Defendant has previously admitted is compensable under the FLSA, but which Defendant has chosen not record in hours worked.

## PRAYER

Wherefore, all premises considered, Plaintiffs move the Court to grant Plaintiffs' Motion for Partial Summary Judgment and enter Judgment that (1) Defendants ISP, Ashland and Lion have violated the FLSA by (1) failing to pay Plaintiffs for compensable work activities and time occurring at the Plant, during the Relief time between 4:30 and 5:00, and (2) failing to accurately record all hours worked.    Plaintiffs seek partial summary judgment that Plaintiffs are entitled to recover relief under the FLSA, including back pay, liquidated damages and attorney fees. Plaintiffs seek a partial summary judgment that Defendants have willfully violated the FLSA.

Respectfully Submitted,

REAUD, MORGAN & QUINN, LLP
801 Laurel Street
Post Office Box 26005
Beaumont, Texas 77720-6005
Telephone:  (409) 838-1000
Telecopier:  (409) 833-8236


By:  */s/Mark Frasher*
      John Werner
      State Bar No. 00789720
      jwerner@rmqlawfirm.com
      Mark Frasher
      State Bar No. 00798187
      mfrasher@rmqlawfirm.com

      **Attorneys for Plaintiffs**


## CERTIFICATE OF SERVICE

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this instrument via the USDC Eastern District's CM/ECF system on June 27, 2017.


      */s/Mark Frasher*
      Mark Frasher