# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

MICHAEL STUNTZ, et al.,         :   Case No. 1:14-cv-00173

           Plaintiff(s),      :   **JUDGE MARIA CRONE**

   v.                              :

                               :   **DEFENDANT ASHLAND ELASTOMERS**

ASHLAND ELASTOMERS LLC.,      :   **LLC'S MOTION FOR SUMMARY**
et al.,                              :   **JUDGMENT AND MEMORANDUM IN**

                               :   **SUPPORT THEREOF**

           Defendants.      :

## MOTION

Defendant Ashland Elastomers LLC ("Ashland") hereby submits this Motion for Summary Judgment on Plaintiffs' remaining FLSA class claim for "early relief" time and on Plaintiff's Stuntz's individual FLSA retaliation claim.   Ashland previously filed a Motion for Partial Summary Judgment on the issue of donning and doffing.   (See Doc. # 152).   Now that the discovery period has ended, Ashland submits this Motion for Summary Judgment as to the remaining allegations in Plaintiffs' Complaint, which are that Ashland allegedly violated the Fair Labor Standards Act ("FLSA") based upon an "early relief" program that permitted employees to arrive up to 30 minutes prior to the start of their twelve (12) hour shift and then leave 30 minutes prior to the end of their shift.[1] The case law in this jurisdiction directly on point makes clear that such an "early relief" program is not a violation of the FLSA.   *See Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509 (E.D. Tex. 2005) (holding that a mandatory 30 minute "early relief" period during a 12 hour shift is *de minimis* and not compensable under the FLSA).

---

[1] Plaintiffs also allege that foremen telling employees where they will be working that day while they wait to clock in is a violation of the FLSA.   The one to two minutes it takes to receive such instructions is *de minimis*.

In addition, Section 301 of the Labor Management Relations Act ("LMRA") would be Plaintiffs' sole remedy for any claim that Defendant violated an "Agreement" to make certain payments. Finally, Plaintiffs' FLSA claims as they relate to "early relief" are untimely.

Ashland also moves this Court for summary judgment as to Plaintiff Stuntz's individual FLSA retaliation claim for the same reasons Defendant Lion Elastomers LLC asserts in its Motion for Partial Summary Judgment related to the FLSA retaliation claim. (*See* Doc. # 216). In addition, however, Ashland should be granted summary judgment on the FLSA retaliation claim because Ashland did not take any materially adverse employment action against Plaintiff Stuntz, as Ashland no longer owned or operated the plant in Port Neches, Texas at the time of his termination. Further, Plaintiff Stuntz executed a Last Chance Agreement in which he specifically agreed that there was just cause to terminate his employment and in which he expressly agreed not to challenge any of the discipline Ashland had issued.

This Motion is supported by excerpts from the deposition transcripts and exhibits of the named Plaintiffs Michael David Stuntz and Dwayne Newman marked as Exhibits A and B along with the Declaration of Trudy Lord marked as Exhibit C and the affidavit of Julie Hopkins marked as Exhibit D.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ..............................................................................................1

II.  STATEMENT OF ISSUES TO BE DECIDED BY THE COURT  ........................2

III.  STATEMENT OF UNDISPUTED FACTS AND PROCEDURAL
     HISTORY  ...................................................................................................3

   A.  The Plant at Port Neches, Texas .................................................................3

   B.  Early Relief Time.......................................................................................3

   C.  The Agreement...........................................................................................4

   D.  Plaintiff Michael David Stuntz's Employment and Termination .................5

IV.  ARGUMENT ...................................................................................................7

   A.  The Early Relief Time is *De Minimis* and Does Not Violate the
       FLSA  ......................................................................................................7

   B.  Section 301 of the NLRA Bars Plaintiffs' Claims Regarding any
       "Agreement" Between the Union and Defendant.........................................8

   C.  The Time Plaintiffs Allegedly Spent Speaking to Foremen Prior
       to their Shift is *De Minimis* and Not Compensable ......................................9

   D.  Plaintiffs' Claims for Alleged Violations of the FLSA based upon
       "Early Relief" are Time Barred ................................................................11

   E.  Plaintiff Stuntz's FLSA Retaliation Claim Fails as a Matter of Law ...........12

       1.  Stuntz did not suffer an adverse employment action .........................12

       2.  There is no causal link between the alleged adverse
           employment action and the FLSA claim; Ashland had a
           legitimate nondiscriminatory reason to issue the written
           warnings; and Stuntz cannot establish pretext....................................15

       3.  The Last Chance Agreement bars Plaintiff's Retaliation
           Claim.................................................................................................17

V.  CONCLUSION..................................................................................................17

CERTIFICATE OF SERVICE ............................................................................................18

## MEMORANDUM IN SUPPORT

### I.   INTRODUCTION

Plaintiffs Michael David Stuntz and Dwayne Newman, on behalf of themselves and others allegedly similarly-situated, filed the original Complaint in this matter on March 21, 2014, as a FLSA collective action against Ashland Elastomers LLC ("Ashland"). Plaintiffs alleged in the original Complaint that certain employees at the Port Neches, Texas plant came to work thirty (30) minutes early each day ("early relief") for a twelve (12) hour shift and were not compensated for this time. (*See* Doc. No. 1). Plaintiffs also alleged that employees should have been paid for the time spent donning and doffing personal protective equipment ("PPE"). (*Id.*) Plaintiffs further alleged that Ashland and the United Steelworkers Union Local 228 ("Union") entered into "promises and agreements," which included discontinuing "early relief" and moving the time clocks to the work area. (*Id.* at ¶¶ 16-18).

On April 9, 2015, Plaintiffs filed an Amended Complaint. (*See* Doc. No. 26). In the Amended Complaint, Plaintiffs reiterated that there was an "Agreement" between the Union and Ashland to move the time clocks and that Ashland did not make payments according to that "Agreement." (*See* Doc. No. 26 at ¶¶ 19-20). On June 21, 2016, this Court granted Defendants' Partial Motion for Summary Judgment and dismissed all of Plaintiffs' state law claims. (*See* Doc. No. 101).

On June 10, 2016, Plaintiffs filed a Second Amended Complaint, which changed the name of some of the Defendants, but made no substantive changes to the causes of action. (*See* Doc. No. 100). On June 6, 2017, Defendant Lion filed a Partial Motion for Summary Judgment regarding Plaintiffs' donning and doffing claims. (*See* Doc. No. 138). Ashland filed a similar Motion on the donning and doffing claims on June 30, 2017. (*See* Doc. No. 152).

On June 19, 2017, Plaintiffs filed a Third Amended Complaint, apparently in reaction to the Motion for Partial Summary Judgment on the donning and doffing issue. (*See* Doc. No. 141). The Fourth Amended Complaint asserts the same causes of action, but also alleges Defendants should be barred from claiming that the "early relief" time is not compensable because Ashland allegedly agreed such time was compensable when it made payments to Plaintiffs pursuant to the "Agreement" to settle a grievance filed by the Union related to "early relief" time. (*See* Doc. No. 171).

The only class claims left in Plaintiffs' Complaint that are not the subject of a granted or pending dispositive motion is the "early relief" time, along with the allegation that since the time clocks have been moved, some supervisors have given some employees directions as to the location where they will be working prior to the time the employees have clocked in. Plaintiff Stuntz also has an individual claim for FLSA retaliation related to his termination.

The record evidence and case law is clear that "early relief" time is not a violation of the FLSA, and any time spent by employees receiving instructions on where to work is *de minimis*. The record is also clear that, at the time of Plaintiff Stuntz's termination, Ashland had already sold the plant where Plaintiff worked and that Ashland played no role whatsoever in Plaintiff Stuntz's termination; therefore, all remaining claims against Ashland should be dismissed.

## II.   STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1.   The first issue is whether the "early relief" time and/or the time spent talking to supervisors violates the FLSA or is *de minimis* as a matter of law, and/or whether such claims are time barred.

2.   The second issue is whether Section 301 of the NLRA bars Plaintiffs' claims regarding any "Agreement" between the Union and Ashland.

3.   The third and final issue is whether Plaintiff Stuntz's FLSA retaliation claim fails as a matter of law, and whether Plaintiff Stuntz's retaliation claim is otherwise barred by a release he signed.

### III.    STATEMENT OF UNDISPUTED FACTS AND PROCEDURAL HISTORY

#### A.    The Plant at Port Neches, Texas

The Port Neches, Texas plant where Plaintiffs worked employed approximately 250 employees, some of whom were in the bargaining unit.   The bargaining unit employees are subject to a collective bargaining agreement ("CBA"). The terms of the CBA were negotiated by the Local 228 Workers' Committee.  (*See* attached Exhibit A Stuntz Depo. at 50 and Stuntz Depo. Exhibit 12.; *see also* Doc. No. 101). The CBA contains a mandatory grievance and arbitration procedure for any disagreement between Ashland and the Union regarding the terms of any agreements negotiated by the parties.  (*Id.* at Article IV).  Plaintiffs Stuntz and Newman were both members of the Workers' Committee. (Stuntz Depo. at 51-55; *See* attached Exhibit B Newman Depo. at 21-24).

#### B.    Early Relief Time

At a time prior to Ashland's purchase of the plant in Port Neches, Texas, the Union requested that they be permitted to come to work as early as thirty (30) minutes prior to their shift start time.  (*See* Declaration of Trudy Lord).  An employee worked a twelve (12) hour shift and the next employee arrived thirty (30) minutes early to relieve him or her of their duty.  The person relieving them would then arrive early as well so employees would only work a total of twelve (12) hours.  This was known as "early relief." (*Id.*).  "Early relief" was entirely voluntary.  Plaintiff Newman testified that it took him approximately 15 minutes to make such "early relief." (See Newman Depo. at 62).

Although the practice of "early relief" had been requested by the Union, on May 28, 2013, the Union filed a written grievance regarding "early relief" time.  (*See* Newman Depo. at 146 and Exhibit 5).  The grievance asserted that "early relief" time violated the FLSA.  (*See*

3

Newman Depo. at 146-150 and Exhibit 5). Thereafter, the Company and the Union's Workers' Committee held multiple meetings throughout the summer of 2013 to discuss a resolution of the grievance. (*See* Declaration of Trudy Lord; *see also* Doc. No. 101 at 2; *see also* Stuntz Depo. at 125-127; *see also* Newman Depo. at 160-191). At no time during these negotiations did Ashland ever indicate or agree that the "early relief" time was a violation of the FLSA. Ashland did, however, seek to reach an "Agreement" with the Union to resolve the grievance and to avoid costly litigation. Plaintiffs Stuntz and Newman were involved in these meetings to help reach this "Agreement." (*See* Stuntz Depo. at 127; Newman Depo. at 160-191).

### C.      The Agreement

Ultimately, as this Court determined, to resolve the grievance, Ashland and the Union reached an "Agreement" that Ashland would go back three (3) years[2] and pay the employees from the time they punched in at the gate to the time they punched out at the gate minus six (6) minutes, which is the amount of time that it would have taken the employees to get from the plant gate to the actual worksite and back. (*See* Doc. No. 101 at 2-3). Ashland then took that figure, doubled it and paid that total amount to employees to resolve the grievance. (Id.).[3]

In doing so, Ashland paid out the maximum amount of compensation for the longest period of time possible under the FLSA and imposed upon itself the maximum amount of possible damages. (*Id.*). Although the Union had, in fact, requested the "early relief" time and

---

[2] There is a two year statute of limitations for FLSA claims unless the plaintiff can prove that the employer violated the FLSA willfully. *See Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, 2013 U.S. Dist. LEXIS 15788 (S.D. Texas, Feb. 6, 2013). In the Agreement with the Union, Ashland agreed to pay three years of backpay for each employee despite the fact that there was no evidence of a willful violation.

[3] For a plaintiff to recover double or liquidated damages in a FLSA case, it must be established that the employer did not act in good faith. *Lowe v. Southmark Corp.*, 998 F.2d 335, 337-38 (5th Cir. 1993). Here, Ashland agreed to pay double damages despite any evidence that it had failed to act in good faith.

Ashland could have fought the grievance, Ashland was simply trying to resolve the grievance and to avoid becoming involved in litigation.

As part of the "Agreement," this Court determined that: "The Union agreed to allow Ashland Elastomers to add time clocks located closer to the employees' work areas. . . ." (See Doc. No. 101 at 3). "Early relief" was therefore discontinued as of September 16, 2013. (*See* Affidavit of Julie Hopkins). Plaintiffs now claim that after the time clocks were moved, foremen gave employees instructions about where to work prior to when employees clocked in for their shift and that this violated the FLSA. Ashland disputes these claims. Even if true, however, such time is *de minimis*.

### D.     Plaintiff Michael David Stuntz's Employment and Termination

Plaintiff Stuntz began working at the plant in Port Neches, Texas on December 10, 2010. (*See* Stuntz Depo. at 24).   While Ashland owned and operated the plant in Port Neches, Texas, Plaintiff Stuntz had an extensive attendance problem.   This, along with safety violations, ultimately led to Stuntz being placed on a Last Chance Agreement. (*Id.* at 148 and Exhibit 15).

Stuntz received a written warning on July 18, 2011 for accumulating two "No Call, No Shows." (*Id.* at 202-203 and Exhibit 37). It was later revealed that he had been arrested for a DUI and was in jail. (*Id.*). On December 3, 2013, Stuntz received a verbal warning for not following safety procedures. (*Id.* at 204-205 and Exhibit 38).

On August 26, 2014, Stuntz received a written warning after he was tardy twice in 30-days, which is in violation of the Attendance Policy.[4] (*Id.* at 205-207 and Exhibit 39). Stuntz did not dispute this infraction and signed the written warning. (*Id.*). On September 8, 2014,

---

[4] The Attendance Policy in place at the time provided for a written warning for any employee who was tardy two or more times in a 30 day period, and again if they were tardy three or more times in a 60 day period. A "No Call, No Show" is considered more flagrant and permits more stringent discipline by skipping discipline steps. (*See* Stuntz Depo. at Exhibit 16).

Stuntz was placed on a second written warning after another safety violation when he misaligned a valve. (*Id.* at 211-212 and Exhibit 40).   Again, he did not dispute the safety violation and signed the written warning. (*Id.*).

On September 26, 2014, Stuntz was tardy again, which was his second tardy in 30-days and his third tardy in 60-days, which was another violation of the Attendance Policy. (*Id.* at 28-30, 148-149 and Exhibit 15).  Because he was already on a second written warning, this violation was grounds for a "just cause" termination. (*Id.*).   Stuntz did not dispute being tardy and agreed this was proper grounds for termination. (*Id.*).

Rather than terminate Stuntz, however, Ashland gave him another chance and, with the Union's approval, permitted him to sign a Last Chance Agreement.[5] (*Id.* at Exhibit 15).   On September 30, 2014, Stuntz signed and agreed to be bound by the terms of the Last Chance Agreement. (*Id.* at 187-194 and Exhibit 15)   In the Last Chance Agreement, Stuntz expressly recognized and agreed that "**in view of his serious misconduct, just cause exists for his discharge.**" (Exhibit 15) (emphasis added).   Stuntz further agreed "**not to file any grievances, lawsuits, or claims of any nature against the Company or his affiliated unions, which in any way relate to the disciplinary action leading to this Agreement.**" (*Id.*) (emphasis added).

Shortly thereafter, on December 1, 2014, Ashland sold the plant in Port Neches, Texas. (*See* Affidavit of Julie Hopkins).   The entity that now operates the plant is Defendant Lion Elastomers LLC. (*See* Affidavit of Julie Hopkins).   After the sale, Ashland was no longer involved in the operation of the plant in Port Neches, Texas. (*Id.*).   Ashland was no longer the employer of Stuntz. (*Id.*).   In addition, Ashland was no longer the employer of the management

---

[5] It should be noted that Stuntz was tardy on several other occasions, including on March 27, 2014, June 23, 2014, July 29, 2014 and August 1, 2014.

team (Trudy Lord, Tom Rogers and Scott Hardegree) who Plaintiff alleges made the decision to terminate him. (*See* Doc. No. 223 at 4).

Ashland had absolutely nothing to do with the decision to terminate Plaintiff Stuntz. (*See* Affidavit of Julie Hopkins). Ashland was not consulted or made aware of any plan to terminate Plaintiff Stuntz. (*Id.*). In fact, Ashland did not even find out about his termination until the Amended Complaint was filed, which included the allegation of FLSA retaliation. (*Id.*).

## IV.   ARGUMENT

### A.   The Early Relief Time is *De Minimis* and Does Not Violate the FLSA.

The voluntary "early relief" time, which was requested by the Union, only took employees, by Plaintiffs' own estimate, 15 minutes. (*See* Newman Depo. at 62). During a 12 hour shift, this constituted around 2 percent of the overall shift, and therefore was *de minimis* and not a violation of the FLSA. Under the FLSA, employees are not entitled to overtime compensation for compensable work when the time sought is negligible or *de minimis*. *Hesseltine v. Goodyear Tire & Rubber Co*., 391 F. Supp. 2d 509, 519-520 (E.D. Tex. 2005). As this Court has held, an "early relief" shift period that takes employees 15 minutes to complete each day is *de minimis* as a matter of law. *Hesseltine,* 391 F. Supp. 2d at 520.

In *Hesseltine*, a case virtually identical to the instant case, this Court held that a mandatory 30 minute "early relief" period, just like the "early relief" period in this case, was *de minimis* as a matter of law and did not violate the FLSA.[6] *Id.* at 520. In *Hesseltine*, the plaintiffs worked 12 hour shifts at a Goodyear plant in Beaumont, Texas and were required to make "early relief" between 4:30 and 5:00 each day. *Id.* at 511-512. The employees in *Hesseltine* alleged that it took them approximately 10-15 minutes to make "early relief," and that they were not compensated for this time. *Id.* at 520. This Court held that the early relief only constituted from

---

[6] The only difference is that Ashland's "early relief" was voluntary.

1.4% to 2.1% of work time in a 12 hour shift, and therefore was *de minimis* as a matter of law. *Id.*

In this case, Ashland had the exact same "early relief" time as the defendant/employer in *Hesseltine*. Plaintiffs in this case came in for a 12 hour shift and made early relief between 4:30 and 5:00 just like the employees in *Hesseltine*. Also, exactly like the plaintiffs in *Hesseltine*, Plaintiffs in this case estimate that it took them approximately 15 minutes to make "early relief." (*See* Newman Depo. at 62). As a matter of law, under this Court's decision in *Hesseltine*, spending 15 minutes or 2% of a 12 hour shift to make "early relief" is *de minimis* and therefore not a violation of the FLSA. The *Hesseltine* decision is directly on point and clearly establishes that summary judgment is appropriate in this case.

**B.    Section 301 of the NLRA Bars Plaintiffs' Claims Regarding any "Agreement" Between the Union and Defendant.**

While Plaintiffs' claims appear to be based upon the FLSA, Plaintiffs' most recent Amended Complaint now alleges Defendant owes Plaintiffs compensation based upon the negotiated "Agreement" between Defendant and the Union that resolved the early relief grievance. (*See* Doc. 171 at ¶¶ 22-24). Plaintiffs claim that Defendant agreed to make certain payments pursuant to the "Agreement" and failed to do so. (*Id.*). Plaintiffs have no record evidence to support this claim. Instead, the record is clear that Defendant paid Plaintiffs pursuant to the "Agreement."

As this Court determined, Ashland went back three (3) years and paid the employees from the time they punched in at the gate to the time they punched out at the gate minus six (6) minutes. (*See* Doc. No. 101 at 2-3). Ashland then took that figure, doubled it and paid that total amount to employees to resolve the grievance. (*Id.*). There is no dispute. Ashland has complied with the negotiated "Agreement."

8

If there were a dispute over whether Defendant made proper payments according to the "Agreement" between Defendant and the Union, however, then Plaintiffs' exclusive remedy is a claim for a breach of a labor agreement under Section 301 of the NLRA. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211(1985); *Thomas v. LTV Corp.*, 39 F.3d 611, 617 (5th Cir. 1994). This Court determined that the parties ultimately reached an "Agreement" regarding the "early relief" that is subject to Section 301 of the NLRA. (See Doc. No. 101 at 2-3, 8). Plaintiffs have never filed a grievance or sought arbitration for violations of the bargained "Agreement." Likewise, Plaintiffs have failed to pursue any claim under Section 301 of the NLRA. *See Thomas* 39 F.3d at 621-622 (finding that the arbitration-and-grievance proceeding is the exclusive remedy for a breach of the CBA, and the employee may not sue his employer under Section 301 until completion of the proceeding). As such, Ashland is entitled to summary judgment on any claim Plaintiffs have asserted for an alleged violation of the "Agreement."

### C.   The Time Plaintiffs Allegedly Spent Speaking to Foremen Prior to their Shift is *De Minimis* and Not Compensable.

Plaintiffs also now claim that after the time clocks were moved near the worksites and after "early relief" was discontinued, some Plaintiffs continued to show up early. (*See* Doc. No. 146 at 14). Plaintiff Newman alleged that the foremen sometimes informed the employees "where they'll be going to work that day because we change often." (*See* Newman Depo. at 88). Plaintiffs also submitted declarations from employees who all generally claim to have "seen" foremen hand out job assignments prior to shift starting times. (*See* Doc. No. 146 at 14 and Exhibit M). Notably, the employees do not identify the foremen in question or even allege that they themselves were ever given such job assignments. (*Id.*).

Ashland disputes these claims, but only for purposes of this Motion will treat the allegations as accurate. Under applicable case law, however, even if foremen told employees

9

where they would be working for the day, this is not compensable time for purposes of the FLSA. A foreman telling an employee their work location on a given day is not integral and indispensable. To be "integral and indispensable," an activity "must be necessary to the principal work performed and done for the benefit of the employer." *See Von Friewalde v. Boeing Aero. Operations, Inc.*, 339 Fed. Appx. 448, 454 (5th Cir. 2009).

More importantly, even if telling an employee where to go were somehow considered an "integral and indispensable" part of the workday, it would still not be compensable, because the amount of time spent receiving a work location direction is *de minimis*. In *Vega ex rel. Trevino v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994), the Fifth Circuit Court of Appeals held that receiving work assignment instructions from a supervisor about where an employee was going to work that day prior to the beginning of a shift was not compensable. Similarly, in *Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400, 417 (5th Cir. 2011), the Fifth Circuit Court of Appeals held that receiving work assignments on the way to work is not compensable.

It could not take longer than one to two minutes to receive such instructions. If the 15 minutes it takes to make "early relief" is *de minimis*, certainly the one to two minutes it takes for a foreman to tell an employee where to go as a matter of law is negligible. *See Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 519-520 (E.D. Tex. 2005) (15 minutes spent making early relief is *de minimis*); *see also Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 564 (E.D. Tex. 2001) (noting a majority of courts hold that 10 minutes is *de minimis*). As such, summary judgment is appropriate.

D. **Plaintiffs' Claims for Alleged Violations of the FLSA based upon "Early Relief" are Time Barred.**

There is no dispute in this case that the practice of "early relief" was ended on September 16, 2013. (*See* Doc. 141 at ¶ 19; *see also* Doc. 101 at 3; Affidavit of Julie Hopkins). Plaintiffs

claim that the "early relief" time violates the FLSA.  The FLSA contains a two year statute of limitations.[7]  *See* 29 U.S. Code § 255.  The statute of limitations period for a plaintiff in a collective action under the FLSA runs until the date the notice of consent to join a collective action is filed. *See Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 917 (5th Cir. 2008); *see also Switzer v. Wachovia Corp.,* 2012 U.S. Dist. LEXIS 51556, 3 (S.D. Tex. April 12, 2012).

In this case, since "early relief" was ended on September 16 2013, Plaintiffs would have had until September 16, 2015 to file a notice of consent absent a tolling agreement.  Plaintiffs and Ashland entered into tolling agreements that ran, in total, for less than 113 days from June 19, 2014 to November 10, 2014.  (*See* Affidavit of Julie Hopkins).  As such, at the latest, Plaintiffs had until January 7, 2016 to file a notice of consent.  None of the Opt-In Plaintiffs filed a notice of consent until, at the earliest, March 17, 2016.

Because none of the Opt-in Plaintiffs filed a notice of consent until more than two years after "early relief" ended and the tolling agreement had expired, summary judgment should be granted as to any claims related to the "early relief" time.

---

[7] There is a two year statute of limitations for FLSA claims unless the plaintiff can prove that the employer violated the FLSA willfully.  *See Chapman v. A.S.U.I. Healthcare & Dev. Ctr.,* 2013 U.S. Dist. LEXIS 15788 (S.D. Texas, Feb. 6, 2013).  In this case, the case law establishes that a 30 minute "early relief" period does not violate the FLSA at all. Therefore, Plaintiffs cannot establish a "willful" violation of the FLSA by Defendant.

11

E.      **Plaintiff Stuntz's FLSA Retaliation Claim Fails As a Matter of Law.**

Ashland did not take any materially adverse employment action against Stuntz prior to the time it sold the plant in Port Neches, Texas.  Ashland sold the plant on December 1, 2014.  Stuntz was not terminated until January 27, 2015.  Ashland was not involved in the decision to terminate Stuntz.  (*See* Affidavit of Julie Hopkins).  Ashland did not even find out about Stuntz's termination until the Amended Complaint was filed in this case alleging FLSA retaliation.  (*Id.*).

The FLSA prohibits any person from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . ." 29 U.S.C. § 215(a)(3).  "A retaliation claim under the FLSA is subject to the *McDonnell Douglas* analytical framework." *Lasater v. Tex. A&M Univ. Commerce*, 495 Fed. Appx. 458, 461 (5th Cir. 2012).  Thus, a plaintiff must first make a *prima facie* showing of "(1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008).

Here, Stuntz cannot establish that he suffered an adverse employment action, and even if he could, he cannot establish a causal link between the activity and such alleged adverse action because Ashland sold the plant before Stuntz was terminated, and was not involved in his termination.

1.      <u>**Stuntz Did Not Suffer an Adverse Employment Action.**</u>

A plaintiff asserting an FLSA retaliation claim must show that the employer took a "materially adverse" action that "could well dissuade a reasonable worker" from engaging in protected activity.  *Cole v. City of Port Arthur*, 2014 U.S. Dist. LEXIS 96754, 32 (E.D. Tex. July 16, 2014) (granting summary judgment to an employer on an FLSA retaliation claim and finding

that a failed inspection and reprimand for disobeying an order among other things did not constitute "materially adverse" action for purposes of a retaliation claim).

In *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007), the Fifth Circuit Court of Appeals held that a written disciplinary warning for attendance issues did not constitute a "materially adverse" action for purposes of a retaliation claim.  The court in *DeHart* granted the employer summary judgment and noted that where there are colorable grounds for issuing a written warning, such a written warning cannot be considered "materially adverse." *Id.* 442. *See also Muttathottil v. Gordon H. Mansfield*, 381 F. App'x 454, 458 (5th Cir. 2010) (finding that a warning for disruptive behavior in the workplace did not constitute a  materially adverse employment action where there was no job loss, suspension, salary reduction, reduction of job duties, or any other form of discipline occurred).

In this case, while Ashland owned and operated the plant in Port Neches, Texas, Plaintiff only received written warnings for attendance problems and safety violations.  Stuntz never suffered a job loss, suspension, salary reduction, or reduction of job duties as a result of any of those warnings.  More importantly, there were clearly colorable grounds for issuing the written warnings to Stuntz, as, in each instance, Stuntz signed the warnings and accepted responsibility for the infractions.

Plaintiff received his first written warning on July 18, 2011 for accumulating two "No Call, No Shows." (*See* Stuntz Depo. at 202-203 and Exhibit 37).  On December 3, 2013, Plaintiff Stuntz received a verbal warning for not following safety procedures. (*Id.* at 204-205 and Exhibit 38).  Both of those warnings occurred before Stuntz had filed his original Complaint on March 21, 2014 and thus cannot be used to support his retaliation claim.

On August 26, 2014, Stuntz received a written warning after he was tardy twice in 30-days, which is in violation of the Attendance Policy. (*Id.* at 205-207 and Exhibit 39).  Stuntz did not dispute this infraction and signed the written warning.  (*Id.*).  On September 8, 2014, Stuntz was placed on a second written warning after another safety violation when he misaligned a valve. (*Id.* at 211-212 and Exhibit 40).   Again, he did not dispute the safety violation and signed the written warning.  (*Id.*).

On September 26, 2014, Stuntz was tardy again, which was his second tardy in 30-days and third tardy in 60-days, and another violation of the Attendance Policy.  (*Id.* at 28-30, 148-149 and Exhibit 15).   Because he was already on a second written warning, this violation was grounds for a "just cause" termination.  (*Id.*).   Stuntz did not dispute being tardy and agreed this was grounds for termination.  (*Id.*).   Stuntz was not terminated, however; instead, he and the Union agreed to a Last Chance Agreement (*Id.* at Exhibit 15).

As the court in *DeHart* made clear, a written warning for attendance issues is not a "materially adverse" employment action, particularly where there are colorable grounds for such a written warning.  Here, Stuntz did not dispute any of the written warnings he received from Ashland. In fact, not only are there clear colorable grounds for the discipline, in the Last Chance Agreement, Stuntz expressly admitted that "in view of his serious misconduct, just cause exists for his discharge." (*See* Exhibit 15).  Having specifically agreed in the contract that his conduct justified discharge, Stuntz cannot in good faith assert to this Court that there was not colorable grounds for the discharge.  Moreover, as the court in *Muttathottil* noted, a reprimand or warning is not "materially adverse" where there is no job loss, suspension, salary reduction or loss of job duties. Here, there is no dispute that Stuntz never suffered a job loss, suspension or salary reduction while Ashland owned the plant in Port Neches, Texas.

14

On December 1, 2014, Ashland sold the plant in Port Neches, Texas. (*See* Affidavit of Julie Hopkins). The entity that now operates the plant is Defendant Lion Elastomers LLC.  (*See* Affidavit of Julie Hopkins).  After the sale, Ashland was no longer involved in the operation of the plant in Port Neches, Texas. (*Id.*).  Ashland was no longer the employer of Stuntz as of December 1, 2014.  (*Id.*).  After that date, Ashland was no longer the employer of the management team (Trudy Lord, Tom Rogers and Scott Hardegree) who Plaintiff alleges made the decision to terminate him. (*See* Doc. No. 223 at 4).

On January 27, 2015, Lion Elastomers LLC made the decision to terminate Stuntz. Ashland had absolutely nothing to do with that decision.  (*See* Affidavit of Julie Hopkins). Ashland was not consulted or made aware of any plan to terminate Stuntz.  (*Id.*).  Ashland was not even made aware that Stuntz was terminated or what the reason for his termination was.  In fact, Ashland did not find out about the termination until the Amended Complaint was filed, which included the allegation of FLSA retaliation.  (*Id.*).

Because Ashland did not take an "adverse employment action" against Stuntz, his retaliation claim against Ashland fails.

2.   **There is No Causal Link Between the Alleged Adverse Employment Action and the FLSA Claim; Ashland Had a Legitimate Nondiscriminatory Reason to Issue the Written Warnings; and Stuntz Cannot Establish Pretext.**

To establish a causal link, a plaintiff must show that the employer's decision to take adverse action was based in part on knowledge of the employee's protected activity. *Cole v. City of Port Arthur*, 2014 U.S. Dist. LEXIS 96754, 46 (E.D. Tex. July 16, 2014) (granting summary judgment to an employer on an FLSA retaliation claim and finding that no causal link between the FLSA claim and the employee being reprimanded and not being promoted one month after the claim was made).  Where an employer has a legitimate nondiscriminatory reason

to take employment action, and the plaintiff cannot establish pretext, summary judgment should be granted. *Id.*

In this case, Stuntz's first verbal warning on December 3, 2013, and written warning on July 18, 2011 both occurred before the Complaint was even filed in this case. Clearly, there can be no causal link between those warnings and the FLSA claim.   As for the written warnings Stuntz received for attendance and safety related violations after the Complaint was filed, there is simply no causal link to the FLSA claim.  Stuntz signed the written warnings and did not dispute the violations.  In fact, Stuntz has never disputed the violations of the policies that led to his written warnings prior to his termination.  (*See* Stuntz Depo. at 148-149, 205-212)

Indeed, in its Motion for Partial Summary Judgment, Lion Elastomers LLC explained that Stuntz's past disciplinary record, which led to his ultimate termination, is extensive and undisputed.  (*See* Doc. No. 216).  In his Memorandum in Opposition, Stuntz does not disagree. Instead, Stuntz focuses on an alleged causal connection between his last No-Call, No-Show administered by Lion Elastomers LLC and the FLSA claim. (*See* Doc. No. 223).  Nowhere does Stuntz argue that his prior discipline by Ashland was in any way connected to the FLSA claim or was in any way pretext. (*See* Doc. No. 223).  Again, Ashland had nothing to do with the decision to terminate Stuntz for the final No-Call, No-Show that occurred after Ashland sold the plant to Lion Elastomers LLC.

The written warnings Stuntz received from Ashland were clearly for legitimate nondiscriminatory reasons and Stuntz has never offered any argument that these warnings were pretext.

16

### 3.   The Last Chance Agreement Bars Plaintiff's Retaliation Claim.

A release extinguishes a claim or cause of action and bars recovery on the released matter. *Gay v. Aramark Unif. & Career Apparel, Inc.*, 2007 U.S. Dist. LEXIS 86286, 13 (S.D. Tex. 2007). An employee who signs a release will be later barred from bringing a FLSA retaliation claim. *Johnson v. Manpower Prof'l Servs.*, 442 Fed. Appx. 977, 985 (5th Cir. 2011) (granting summary judgment to the employer on an FLSA retaliation claim where the employee had previously signed a limited release that precluded such a claim).

On September 30, 2014, Plaintiff Stuntz and the Union signed and agreed to be bound by the terms of a Last Chance Agreement. (*See* Stuntz Depo. at 187-194 and Exhibit 15). In the Agreement, Stuntz acknowledged that "in view of his serious misconduct, just cause exists for his discharge." (*Id.* at Exhibit 15). In exchange for not being discharged, Stuntz agreed to the terms of the Last Chance Agreement. This included an agreement "**not to file any grievances, lawsuits, or claims of any nature against the Company or his affiliated unions, which in any way relate to the disciplinary action leading to this Agreement**." (*Id.*) (emphasis added).

Thus, Plaintiff Stuntz clearly waived his right to sue based upon any of the discipline administered by Ashland through the Last Chance Agreement. Since Ashland took no action against Stuntz after the Last Chance Agreement, his FLSA retaliation claim against Ashland must fail as a matter of law.

## V.   CONCLUSION

For the foregoing reasons, Ashland Elastomers LLC's Motion for Summary Judgment as to the remaining claims should be granted.

Respectfully submitted,

*/s/ Charles M. Roesch*
Charles M. Roesch (*pro hac vice*)
Jason W. Hilliard (*pro hac vice*)
DINSMORE & SHOHL LLP
255 E. Fifth Street, Suite 1900
Cincinnati, Ohio  45202
Phone: (513) 977-8178
Fax:  (513) 977-8141
E-mail:  chuck.roesch@dinsmore.com
          jason.hilliard@dinsmore.com

and

Bruce M. Partain
WELLS, PEYTON, GREENBERG & HUNT, LLP.
550 Fannin Street, 6th Floor
Beaumont, Texas 77701
P.O. Box 3708
Phone:  (409) 838-2644

*Counsel for Defendant Ashland Elastomers LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of February, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the below-listed individuals:

Mark Frasher
Reaud, Morgan & Quinn
801 Laurel Street
P.O. Box 26005
Beaumont, Texas 77720-6005

Teresa Valderrama
Fisher & Phillips LLP
910 Louisiana Street Suite 4000
Houston, TX 77002

*/s/ Charles M. Roesch*
Charles M. Roesch

11709475v2

18