IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MICHAEL DAVID STUNTZ, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Cause No. 1:14-CV-00173 |
| | § | |
| ASHLAND ELASTOMERS, LLC et al., | § | |
| | § | |
| Defendants. | § | |

### DEFENDANT LION ELASTOMERS LLC'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

/s/ Teresa Valderrama
**TERESA VALDERRAMA**
State Bar No. 20422500
tvalderrama@fisherphillips.com
**MAURO RAMIREZ**
State Bar No. 24060460
mramirez@fisherphillips.com
**FISHER & PHILLIPS LLP**
910 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 292-0150 Phone
(713) 292-0151 Fax

**ATTORNEYS FOR DEFENDANT**
**LION ELASTOMERS LLC**

**OF COUNSEL:**

**FISHER & PHILLIPS LLP**
910 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 292-0150 Phone
(713) 292-0151 Fax

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF UNDISPUTED FACTS ......................................................... 3

III.    PROCEDURAL HISTORY................................................................................... 6

IV.     ISSUES PRESENTED........................................................................................... 8

V.      LAW & ARGUMENT........................................................................................... 8

        A.     Section 301 of the LMRA Preempts Plaintiffs' Claims Regarding The "Wage
               Agreement" Between Ashland and the Union. ...................................... 8

               1.      Per the Court's prior holdings, the Wage Agreement is "a contract
                       negotiated between the Union and Ashland Elastomers for the
                       purpose of maintaining the peace between them" for purposes of the
                       LMRA § 301(a) preemption analysis.".................................................... 8

               2.      Plaintiffs' claims require the Court to interpret the terms of the Wage
                       Agreement, and are therefore claims preempted under LMRA §
                       301(a) as opposed to independent claims for substantive FLSA
                       rights. ..................................................................................................... 10

               3.      The Supreme Court's decision in *Barrentine* and the Fifth Circuit's
                       decision in *Bernard* do not "bar" Lion from asserting that Plaintiffs'
                       claims are not FLSA claims, but support the distinction between
                       claims relying on interpretation of a collective bargaining agreement
                       and claims for substantive FLSA rights.................................................. 12

        B.     The Early Relief Time Is *De Minimis* and Does Not Violate the FLSA. ............. 14

        C.     Other "Off the Clock" Time Is *De Minimis* and Not Compensable. .................... 16

        D.     Lion adopts the arguments presented by Ashland in their Motion for
               Summary Judgment [Dkt. No. 238] to the extent that they are applicable to
               the claims against Lion. ...................................................................... 17

VI.     CONCLUSION.................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Pilgrim's Pride Corp.*,
    147 F.Supp. 2d 556 (E.D.Tex. 2001) ..................................................................................16

*Barrentine v. Arkansas-Best Freight System, Inc.*,
    450 U.S. 728 (1981) .......................................................................................9, 12, 13, 14

*Bernard v. IBP, Inc.*,
    154 F.3d 259 (5th Cir. 1998) ...............................................................................12, 14

*Chambers v. Sears Roebuck & Co.*,
    428 Fed. Appx. 400 (5th Cir. 2011) ....................................................................16

*Hesseltine v. Goodyear Tire & Rubber Co.*,
    391 F. Supp. 2d 509 (E.D.Tex. 2005) ...........................................................3, 15, 16

*Martin v. Lake County Sewer Co.*,
    269 F.3d 673 (6th Cir. 2001) .............................................................................9, 11

*Retail Clerks Intern. Ass'n, Loc. Unions Nos. 128 and 633 v. Lion Dry Goods,
Inc.*,
    369 U.S. 17 (1962) .............................................................................................9, 10

*Smith v. Kerrville Bus Co.*,
    709 F.2d 914 (5th Cir. 1983) ...............................................................................9, 10

*Valdino v. A. Valley Engineers*,
    903 F.2d 253 (3rd Cir. 1990) ..............................................................................9

*Vega v. Gasper*,
    36 F.3d 417 (5th Cir. 1994) ................................................................................16

*Von Friewalde v. Boeing Aerospace Ops., Inc.*,
    339 Fed. Appx. 448 (5th Cir. 2009) ...................................................................7, 16

**Statutes**

29 U.S.C. § 185(a) ...................................................................................................8

29 U.S.C. § 203(o) ...................................................................................................10

## I.   INTRODUCTION

Defendant Lion Elastomers LLC ("Lion") owns a manufacturing plant in Port Neches, Texas.  Defendant Ashland Elastomers, LLC ("Ashland") owned the plant in the past. Michael Stuntz and Dwayne Newman (collectively, "Plaintiffs") both worked in the plant's Production Unit and were members of the Steelworkers Union Local 228 (the "Union"), the collective bargaining representative of the Production Unit employees.

In September 2013, Ashland (then the owner of the plant) and the Union negotiated a collectively-bargained agreement that (1) terminated the "early shift relief" practice then allowed at the plant, (2) implemented a new time-clock system with rules for time punches that eliminated the "early shift relief" practice previously allowed and automatically paid for up to 15 minutes of time beyond the 12-hour assigned work shift; and (3) provided for a negotiated payment to affected workers to compensate for the *past* impact of the "early shift relief" practice followed by Ashland using an agreed-upon formula tied to the period between the gate swipe or "punch" times[1] for entry onto and exit from plant premises.  *See* discussion of Wage Agreement in Lion's Motion seeking summary judgment on state court claims preempted by federal labor law.  The Wage Agreement resolved a dispute raised by the Union about pay allegedly owed to employees at the plant under the Fair Labor Standards Act ("FLSA").  This collectively-bargained agreement – the "Wage Agreement" – is the centerpiece of Plaintiffs' subsequent wage-and-hour claims.  The Wage Agreement is so-designated and made an exhibit to Plaintiffs' Original, First Amended, and

---

[1] Until Ashland implemented the Wage Agreement in September 2013, employees entering the plant did not have a location to clock in for work but only performed a "gate swipe" at the turnstile where contractors, employees, and other persons exited and entered the plant.  Employees were paid a standard 12-hours as the measure for wage payments since production employees manned their work stations 24/7.  After the September 2013 implementation of the Wage Agreement, employees still "gate swipe" in at the front turnstile (along with all others who come onto plant premises), but the start of paid time is at the time clocks set up for that purpose near the point where persons visiting the plant must be wearing certain protective gear such as hardhats.

Second Amended Collective Action Complaints filed in this lawsuit.  *See* Dkt. Nos. 1, 26, 100 at their Exs. D.

In June 2016 the Court granted Ashland's and Lion's respective Motions for Summary Judgment on Plaintiffs' state law claims.  In doing so, the Court found that "the Wage Agreement was a contract negotiated between the Union and Ashland Elastomers for the purpose of maintaining the peace between them…" and held, therefore, that "any claims inextricably entwined with the Wage Agreement are preempted by federal labor law."  [Dkt. No. 101 at 11]. Based on this threshold finding, the Court continued its preemption analysis and concluded that the resolution of Plaintiffs' state breach of contract and tort claims required an interpretation of the Wage Agreement.  *Id*. at 11-13.  Because (1) the Wage Agreement was a labor contract between Ashland and the Union, and (2) Plaintiffs' state law claims were intertwined with the Wage Agreement, the Court held that section 301(a) of the Labor Management Relations Act ("LMRA") preempted Plaintiffs' state law claims.

After the dismissal of the state law claims as preempted upon a finding that the Wage Agreement is a collectively-bargained labor contract, the claims remaining are the (1) conditionally certified FLSA overtime claims for donning and doffing; (2) Stuntz's individual retaliation claims; and (3) the alleged violations of the FLSA based upon the "early relief" practice terminated in September 2013 that permitted employees to arrive up to 30 minutes prior to the start of their twelve hour shift and similarly leave 30 minutes prior to their shift while still achieving a 12-hour work day.  This "early relief" practice claim and pay for any overlap time required to make person-to-person relief is the essence of the dispute that was resolved through the collectively-bargained Wage Agreement.[2]

---

[2] The Wage Agreement formula paid the affected employees for time that extended well beyond the "overlap" necessary for person-to-person shift relief by including not just the one-to five minutes typically used to perform that

Like the dismissed state law claims, claims related to the breach of the Wage Agreement—*i.e.*, claims that Ashland did not follow through on how it paid out the agreed-upon formula to resolve claims under the discontinued "early relief" practice—are preempted by section 301 of the Labor Management Relations Act ("LMRA").   These claims are based upon the interpretation of a collectively-bargained agreement—the Wage Agreement.

Moreover, even if these claims were not preempted, the case law in this jurisdiction makes clear that any impact on wages of an "early relief" practice like that in place until September 2013 when terminated under Ashland, is *not* a violation of the FLSA.  *See Hesseltine v. Goodyear Tire & Rubber Co*., 391 F. Supp. 2d 509 (E.D.Tex. 2005)(holding that impact of "early relief" practice in the context of a 12-hour paid shift is *de minimis* – the company is paying the employees for 24/7 coverage of their work stations, and the person-to-person "shift relief" required to take place at the work stations is *de minimis*, unpredictable, and not compensable under the FLSA).

Lion asks that Court grant summary judgment and dismiss Plaintiff's remaining wage-and-hour claims against it relating to the early relief practice in place under a prior employer (Ashland) and resolved through the Wage Agreement negotiated between Ashland and the Union at the time the disputed arose.

## II.    STATEMENT OF UNDISPUTED FACTS

Lion owns a plant that manufactures synthetic rubber in Port Neches, Texas. Ashland owned the plant previously.   Plaintiffs Michael Stuntz and Dewayne Newman both worked in the plant's Production Unit and were members of the Steelworkers Union Local 228 (the "Union").   Stuntz Dep. (Exhibit A to this Motion) at 49, 126; Newman Dep. (Exhibit B to this

---

action, but also paid for all of the time spend on any activity—work related or not—from the time of entry to time of exit, less six minutes.

Motion) at 21.  The Union is the collective bargaining representative of the Production Unit employees.  Stuntz Dep. at 42; Newman Dep. at 21.  The bargaining unit employees are subject to a collective bargaining agreement ("CBA"), the terms of which are negotiated by the Union Workers' Committee which is comprised of Union members elected to negotiate contracts on behalf of the Union.  Stuntz Dep. at 41, 50; Newman Dep. at 23, 25, Exh. 12.  These contracts cover all of the terms and conditions of employment, including the wages and hours worked by the bargaining unit.  Newman Dep. at Exh. 12.

Historically, the Production Unit employees were paid for 12-hour shifts and followed a practice called "early shift relief."  [Dkt. # 171-1, Exh. E].  An employee worked a twelve (12) hour shift and the next employee arrived thirty (30) minutes early to relieve him or her of their duty.  The person reliving them would then arrive early as well, so employees would work only a total of twelve (12) hours, though the shift change would occur a half an hour earlier than the officially-scheduled start of shift.  This "early relief" program was entirely voluntary.[3]  Plaintiff Newman testified that it took him approximately 15 minutes to make such "early relief."  Newman Dep. at 62.

On May 28, 2013, the Union filed a written grievance regarding the "early relief" period, arguing that the "early relief" time violated the FLSA, without explaining what the violation might be.  Newman Dep. at Exh. 5.  Thereafter, Ashland and the Workers' Committee had multiple meetings during the summer of 2013 to discuss a settlement of the claimed FLSA violation.  Newman Dep. at 164-69.

---

[3] The early shift relief practice allowed employees to avoid the disciplinary effect of arriving late to work for unexpected reasons.  By moving the whole shift cycle ahead by half an hour, employees would not be charged with the occasional unexpected tardy unless they arrived more than half-an-hour late.

The Workers' Committee and Ashland ultimately negotiated a collectively bargained agreement ("Wage Agreement") to settle the dispute in September 2013. Newman Dep. at 190. Under the Wage Agreement, Ashland agreed to pay back wages for the previous three years. Newman Dep. at Exh. 7. Ashland calculated the back wages based on the employees' entry and exit swipe times at the plant's main gate entrance, minus six minutes per day, to account for the time the employees spent walking between the main gate and their work stations. *Id*. Ashland also agreed to pay an additional equal amount as a "penalty." *Id*. The Wage Agreement also provided that going forward, the "early shift relief" practice would be eliminated, and Ashland agreed to pay employees based on their punch times. *Id*. The Union agreed to allow Ashland to add time clocks located closer to the employees' work areas, and these were the clocks that would be used to track the employees' work time. *Id*. Ashland sent the employees a document entitled "Questions & Answers: Pay Correction and Change in Pay Rules—Operators," which described the terms of the Wage Agreement. *Id*.

Subsequently, Ashland began issuing checks to the employees per the terms of the Wage Agreement. Newman Dep. at 213. After the initial payout, the Union complained because the employees did not believe that the payout was accurately calculated. Newman Dep. at 226. Ashland agreed to issue a second round of checks in an attempt to correct the Union's concerns. Newman Dep. at 130. The Union never filed a grievance claiming that Ashland's calculations did not adhere to the collectively-bargained Wage Agreement. Stuntz Dep. at 138-139, 150-51; Newman Dep. at 230-31. Stuntz and Newman, however, believe that the second round of checks was also calculated inaccurately.

This lawsuit followed and has largely focused on the events described above related to the collectively-bargained Wage Agreement between the Union and Ashland.

### III.   PROCEDURAL HISTORY

In their First Amended Complaint, Plaintiffs alleged state law claims of breach of contract, negligence, conversion, and fraud claims related to the Wage Agreement and sought class action treatment for these claims under Rule 23 of the Federal Rules of Civil Procedure.  [Dkt. No. 26].  These claims became the subject of Motions for Partial Summary Judgment filed by both Ashland and Lion.  [Dkt. Nos. 52 & 54].

On June 21, 2016, the Court issued its Order granting Ashland and Lion's Motions for Partial Summary Judgment.  [Dkt. No. 101].  In doing so, based on the undisputed facts referenced above, the Court found that "the Wage Agreement was a contract negotiated between the Union and Ashland Elastomers for the purpose of maintaining the peace between them…" and held, therefore, that "any claims inextricably entwined with the Wage Agreement are preempted by federal labor law."  [Dkt. No.101, p. 8].

Based on this threshold finding that the Wage Agreement was a labor contract between Ashland and the Union, the Court continued its preemption analysis and concluded that the resolution of Plaintiffs' breach of contract and tort claims required an interpretation of the Wage Agreement.  [Dkt. No. 101, p. 11-13].  Based on this premise, the Court went on to dismiss all of Plaintiffs' state law claims as preempted by federal labor law.  [Dkt. No. 101, pp. 11-16].

Thereafter, the remaining claims in this lawsuit are the conditionally certified FLSA overtime claims for donning and doffing and Stuntz's individual retaliation claim.  As described below, Lion has filed dispositive motions on both of these claims.  Plaintiffs also complain about alleged violations of the FLSA based upon an "early relief" program that permitted employees to arrive up to 30 minutes prior to the start of their twelve hour shift and then leave 30 minutes prior to their shift and other "off the clock" activities related to receiving work instructions prior to their shift starting times.

With respect to the pending dispositive motions, Lion has filed the following:

- On June 6, 2017, Lion filed a Motion for Partial Summary Judgment on Plaintiffs' (both the named Plaintiffs and class members) donning and doffing claims, arguing that Plaintiffs' claims for alleged unpaid overtime for time spent donning and doffing personal protective equipment before and after their shifts fail for a number of independent reasons including, but not limited to, the Union's express agreement to a timekeeping arrangement (in the Wage Agreement) where employees would not be paid for donning and doffing based on the new location of the time clocks.  [Dkt. No. 138].[4] [5]

- On November 21, 2017, Lion filed a Motion for Partial Summary Judgment on Stuntz's individual FLSA retaliation claim.  [Dkt. No. 216].  This Motion was heard informally in chambers by Magistrate Judge Hawthorn on February 9, 2018.

The only claims left in Plaintiffs' Complaint that are not the subject of a granted or pending dispositive motion relate to (1) payment for time spent in the person-to-person shift relief under the "early relief time" practice; and (2) allegations that after the time clocks were installed in September 2013, some supervisors have notified some employees as to the location where they will be working before the employees actually clock in.[6]  This is a four second instruction. Broussard Dep. (Ex. D) at 209.

---

[4] Plaintiffs' claims further fail under FLSA § 3(o) which does not require pay for donning and doffing time where the Union agrees, either explicitly or implicitly, to a practice where pre-and post-shift donning and doffing is not paid time.  That has been the unchallenged practice in this case at least since September 2013.  Even if the FLSA applied, donning and doffing the types of PPE at issue in this case are not compensable as a matter of law, and even if these donning and doffing activities were compensable, the amount of time spent actually donning and doffing is *de minimis* and not compensable as a matter of law.  *See Von Friewalde v. Boeing Aerospace Ops., Inc*., 339 Fed. Appx. 448, 454 (5th Cir. 2009) (daily periods of approximately ten minutes or less are generally considered *de minimis*).

[5] On November 17, 2017, Lion filed an unopposed Motion for the Court to consider its Motion for Partial Summary Judgment on the Donning and Doffing Claims as applicable to Plaintiffs' Fourth Amended Complaint – which Plaintiffs filed after Lion had filed the Motion for Partial Summary Judgment.  [Dkt. No. 214].

[6] On July 5, 2017, Lion filed a Motion to Dismiss under Rule 12(b)(6) relating to new "off-the-clock" claims made by the Plaintiffs in the Third Amended Complaint.  These alleged activities related to events other than donning and doffing; however, the Third Amended Complaint contained no details about these alleged preliminary/postliminary events (especially details as to why these events constituted compensable time).  Further, in addition to the deficiencies in the Named Plaintiff's individual "off-the-clock" claims, the claims were not applicable to the collective action as the proceedings related to conditional certification and court ordered notice had not encompassed these allegations (which was limited to the donning and doffing claims).  [Dkt. No. 156].  On November 13, 2017, Lion filed a Motion to Dismiss under Rule 12(b)(6) related to Plaintiffs' Fourth Amended Complaint, which suffered the exact same deficiencies as the Third Amended Complaint with respect to these alleged "off-the-clock" claims.  [Dkt. No. 208].

Now, as described below, Lion moves the Court to dismiss Plaintiffs' remaining wage-and-hour claims as they rest upon the collectively-bargained agreement between Ashland and the Union and are, therefore, preempted by federal labor law.  In the alternative, these claims fail because the activities are not compensable under the FLSA or subject to the *de minimis* doctrine.

## IV.    ISSUES PRESENTED

1.    Whether Plaintiffs' remaining wage-and-hour claims involve an interpretation of the Wage Agreement and are, in fact, claims under section 301 of the LMRA as opposed to claims for substantive rights under the FLSA.

2.    Whether the minimal, person-to-person shift relief time at the work station (time that was unpaid until September 2013 before the early shift relief practice was terminated) and/or brief communications with supervisors about work location occurring before clocking in (after September 2013) are *de minimis*, and therefore do not violate the FLSA as a matter of law.

## V.    LAW & ARGUMENT

**A.    Section 301 of the LMRA Preempts Plaintiffs' Claims Regarding The "Wage Agreement" Between Ashland and the Union.**

       **1.    Per the Court's prior holdings, the Wage Agreement is "a contract negotiated between the Union and Ashland Elastomers for the purpose of maintaining the peace between them" for purposes of the LMRA § 301(a) preemption analysis."**

Section 301(a) of the Labor Management Relations Act ("LMRA") provides federal jurisdiction and remedies for an individual employee to enforce his rights under a collective bargaining agreement.  29 U.S.C. § 185(a)(stating, "Suits for violation of contracts between an employer and a labor organization representing employees…may be brought in any district court of the United States having jurisdiction of the parties….").  Specifically, section 301(a) governs

the relationships between employers and unions by "encourage[ing] negotiations of terms and conditions of employment through the collective bargaining process." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 734 (1981).  To effectuate Congress' intent for an exclusive framework for federal labor law, "courts ordinarily defer to collectively bargained-dispute resolution procedures when the parties' dispute arises out of the collective-bargaining process." *Barrentine*, 450 U.S. at 736.  Therefore, section 301 preempts an employee's claim when it is based on a dispute related to or requiring the interpretation of contract terms under a collectively-bargaining agreement.  *Valdino v. A. Valley Engineers*, 903 F.2d 253 (3rd Cir. 1990); *Martin v. Lake County Sewer Co.*, 269 F.3d 673 (6th Cir. 2001).

The term "contracts between an employer and a labor organization" is not limited to a formal collective bargaining agreement itself but includes separately-negotiated agreements between a union and an employer that maintains the labor peace between them.  *Retail Clerks Intern. Ass'n, Loc. Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962) (stating, "It is enough that this is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them").  The Fifth Circuit, speaking to the broad range of agreements subject to § 301 preemption, has stated, "It is well-established that § 301 must be broadly construed to encompass any agreement, written or unwritten, formal or informal, which functions to preserve harmonious relations between labor and management." *Smith v. Kerrville Bus Co.*, 709 F.2d 914, 920 (5th Cir. 1983).

In this case, the Court has held that the Wage Agreement between Ashland and the Union is a contract under section 301:

> In this case, the undisputed facts establish that Ashland Elastomers recognized the Union "as the sole and exclusive bargaining agent with respect to rates of pay, hours of work, and other conditions of employment."  CBA, Art. I, Dkt. # 55, at p. 57. The Workers' Committee

was comprised of five Union members elected by the Union members to represent the Union in negotiations with Ashland Elastomers.  In March 2013, the Workers' Committee submitted a Grievance Report to Ashland Elastomers, complaining that its early relief policy violated the FLSA. Initially, Ashland Elastomers responded that the complaint was not a grievance under the CBA. Subsequently, the Workers' Committee had a series of meetings with Ashland Elastomers's management.  Ultimately, the Workers' Committee and Ashland Elastomers reached the Wage Agreement resolving the dispute.  Under the Wage Agreement, Ashland Elastomers agreed to pay back certain wages that the employees allegedly did not receive during the early relief period, agreed to discontinue the early relief policy, and moved the time clocks to the other side of the bathhouse to carve out the donning and doffing of PPE from the pay period. ***Because the Wage Agreement was a contract negotiated between the Union and Ashland Elastomers for the purpose of maintaining the peace between them, any claims inextricably entwined with the Wage Agreement are preempted by federal labor law***.

(Emphasis added).

The Court's holding was overwhelmingly supported by facts establishing that the Wage Agreement is "an agreement made between parties in a labor contract."  See *Retail Clerks*, 369 U.S. at 28; *Smith*, 709 F.2d at 920.[7]

2.   **Plaintiffs' claims require the Court to interpret the terms of the Wage Agreement, and are therefore claims preempted under LMRA § 301(a) as opposed to independent claims for substantive FLSA rights.**

The next question is whether Plaintiffs' wage-and-hour claims require that the Court interpret the terms of the collectively-bargained Wage Agreement.  As noted above, if a claim requires the interpretation of a collectively-bargained agreement, it is preempted by federal labor law and restricted to an applicable collective-bargaining agreement's dispute resolution

---

[7] After Plaintiffs realized that the Court's finding regarding the Wage Agreement leads to Defendants' entitlement to summary judgment on their donning and doffing claims under FLSA § 3(o) (29 U.S.C. § 203(o)), Plaintiffs filed a Motion for Reconsideration.  [Dkt. #181].  Ashland and Lion had responded.  [Dkt. # 184 & 185].  As stated therein, Plaintiffs' Motion for Reconsideration fails because it is undisputed that the Wage Agreement accurately reflects the agreement between the Union and Ashland to eliminate "early shift relief."  Plaintiffs have repeatedly taken this position in their pleadings and in their deposition testimony.  Defendants have offered voluminous evidence unequivocally demonstrating that the Union agreed to the Wage Agreement.  The Court reached its conclusion after careful analysis, reaching the only possible conclusion based on the evidence.

procedures.  *Valdino,* 903 F.2d at 265 (stating, "[T]he FLSA contains no language suggesting that an action filed thereunder would be an appropriate vehicle for the interpretation of a disputed provision of the collective bargaining agreement….[W]e believe that claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA…"); *Martin,* 269 F.3d 679 (stating, "Although Martin alleges violations of the FLSA, these claims rely on an interpretation of the terms of the underlying CBA….Accordingly, we affirm the district court's conclusion that Martin's purported FLSA claim is also governed by the six-month statute of limitations that applies to the rest of his hybrid § 301 cause of action").

The answer to this question is straight-forward as the Plaintiffs' claims cannot be decided without interpreting the terms of the collectively-bargained Wage Agreement.  Plaintiffs' claims are based on the 2013 Union grievance against Ashland, the fall 2013 meetings involving the Union and Ashland, and the Wage Agreement between the Union and Ashland.  Plaintiffs argue they should be paid under the FLSA based on their security gate punches minus six minutes because that those are the parameters Ashland and the Union *agreed to* for the payout over the "early shift relief" practice.  Thus, if Plaintiffs believe they were not paid according to the terms of the Wage Agreement, their exclusive remedy is either to file an arbitration claims under the union contract or file a claim under section 301 of the LMRA for breach of a labor agreement, not a claim under the FLSA.

There is an additional bar to claims against Lion under the Wage Agreement.  At the time Lion took control of the plant, the early relief practice (under which Ashland—but not Lion—did not allegedly pay for the overlap of time necessary for a person-to-person shift relief at the work station) no longer was being used.  Thus, to the extent Plaintiffs rely on the Wage

11

Agreement to claim entitlement to wages for the period of time when the "Early Relief" practice was being used—which was pre-September 2013—Lion is not even in the picture and cannot be liable.  It is undisputed that from September 2013 forward, the half-hour early shift relief period was eliminated and employees were paid not just for their 12-hour shifts but for the time required to make person-to-person relief at their stations where there is overlap of shift time.  It also is undisputed that Lion had nothing to do with the calculation of the payouts made under the September 2013 Wage agreement, which purported to pay based on security gate punches minus six minutes. Plaintiffs' sole remedy is a claim under section 301 of the LMRA.

Suffice to say, Plaintiffs' desire and argument that they be paid based on their security gate punches minus six minus is not a claim under the FLSA but, rather, is a claim under federal labor law.

> **3.**     **The Supreme Court's decision in *Barrentine* and the Fifth Circuit's decision in *Bernard* do not "bar" Lion from asserting that Plaintiffs' claims are not FLSA claims, but support the distinction between claims relying on interpretation of a collective bargaining agreement and claims for substantive FLSA rights.**

After seeing the effect of LMRA preemption on their state law claims, Plaintiffs plead in their Fourth Amended Complaint that "Defendants are barred from claiming that the claims in this case are not covered by the FLSA, or that the claims should have been brought under the CBA or that Plaintiffs are barred from obtaining the requested relief in this Court by virtue of any alleged agreement with the Union." [Dkt. # 171, ¶ 16] (citing *Barrentine*, 450 U.S. at 740-41; *Bernard v. IBP, Inc.*, 154 F.3d 259, 264 (5th Cir. 1998); 29 C.F.R. § 541.4.).  This simply makes no sense.  No such bar exists.

*Barrentine* and *Bernard* do not "bar" Defendants from asserting that their claims "are not covered by the FLSA."  To the contrary, not only is it a plaintiff's burden to establish the predicates to show that a particular statute applies to the plaintiff's claims, but these cases establish

and rely upon a distinction between an employees' contractual rights arising out of an applicable collective-bargaining agreement and an employees' statutory rights to minimum wage and overtime pay under the FLSA.  *Barrentine*, 450 U.S. at 745.  Unlike this case, in *Barrentine* and *Bernard* the courts found facts indicating that the claims were based on *independent* FLSA statutory rights – as opposed to contractual rights under a collectively-bargained agreement like the Wage Agreement in issue here.  In *Barrentine* and *Bernard*, unlike this case, the interpretation of the collective-bargaining agreements at issue were not required to adjudicate the respective claims.

In *Barrentine*, the Court noted that federal labor law "encourages the negotiation of terms and conditions of employment through the collective-bargaining process."  *Barrentine*, 450 U.S. at 734.  Further, in order to effectuate Congress' intent that "the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement" is "a method agreed upon by the parties…," the Court noted that "courts ordinarily defer to collectively bargained-dispute resolution procedures when the parties' dispute arises out of the collective bargaining process."  *Barrentine*, 450 U.S. at 735-36 (quoting 29 U.S.C. § 173(d).

Unlike claims "based on rights arising out of the collective-bargaining agreement," the Court noted that "different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers."  *Barrentine*, 450 U.S. at 737.  Ultimately, based on the facts at issue, the Court concluded that the claim at issue did not arise from the interpretation of the collective bargaining agreement or a dispute of the intent of the parties to such a contract, rather stating, "[T]he FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process.  They

13

devolve on petitioners as individual workers, not as members of a collective organization…." *Barrentine*, 450 U.S. at 745.  The Court, therefore, held that the "petitioners' claim [was] not barred by the prior submission of their grievances to the contractual dispute-resolution procedures." *Id*.

Similarly, in *Bernard*, unionized employees worked under a collective-bargaining agreement "providing for one thirty minute meal break during each shift."  The employer did not compensate the employees for the thirty minute break.  Believing that they should have been compensated for these breaks because they were not free to use the time for their own purposes, the employees filed suit under the FLSA.  *Bernard*, 154 F.3d at 262.  On appeal, the employer argued that the district court should have dismissed the case because the plaintiff's FLSA suit was preempted by the collective-bargaining agreement's grievance and arbitration procedures. *Bernard*, 154 F.3d at 263.  The Fifth Circuit disagreed finding that the plaintiffs were pursuing suit under the FLSA completely independent from their rights under the collective-bargaining agreement.  *Bernard*, 154 F.3d at 263-64.

As described above, here Plaintiffs are not pursuing claims that are independent from the collectively-bargained Wage Agreement.  Rather their claims rest upon the interpretation of the Wage Agreement and their discontent with the manner in which that Agreement – a settlement between the Union and Ashland – was carried out.  Plaintiffs have failed to pursue any claim under section 301 of the LMRA.  As such, Lion is entitled to summary judgment on any claim that Plaintiffs have asserted for an alleged violation of the Wage Agreement.

### B.  The Early Relief Time Is *De Minimis* and Does Not Violate the FLSA.

In the alternative, the person-to-person shift relief time (which applies only to the period of time prior to September 2013 when the practice terminated) that was allegedly unpaid because of the "early relief" practice that was being followed is *de minimis* as a matter of law, and

therefore does not violate the FLSA.  Under the FLSA, employees are not entitled to overtime compensation for compensable work when the time sought is negligible or *de minimis*.  *Hesseltine v. Goodyear Tire & Rubber Co*., 391 F. Supp. 2d 509, 519-520 (E.D.Tex. 2005).  In *Hesseltine*, the Eastern District of Texas held that unpaid time to cover person to person shift relief at the work station, and that takes employees 15 minutes to complete each day, is *de minimis* as a matter of law.  *Hesseltine*, 391 F.Supp. 2d at 520.  Here, the "early relief" time only took employees, by Plaintiffs' own estimate, 15 minutes.  *See* Newman Dep. at 62; Ensign Dep. (Exhibit C to this Motion) at 72.

In *Hesseltine*, a case virtually identical to the instant case, this Court held that a mandatory 30 minute "early relief" period, just like the "early relief" period in this case, was *de minimis* as a matter of law and did not violate the FLSA.  *Id*. at 520.  In *Hesseltine*, the plaintiffs worked 12 hour shifts and were required to make "early relief" between 4:30 and 5:00 each day.  *Id*. at 511-12.  The employees alleged that it took them approximately 10-15 minutes to make "early relief," and that they were not compensated for this time.  *Id*. at 520.  The Court held that the early relief only constituted from 1.4% to 2.1% of work time in a 12 hour shift and therefore was de minimis as a matter of law.  *Id*.

Ashland had the same "early relief" time as the employer in *Hesseltine*.  Plaintiffs came in for a 12 hour shift and made early relief between 4:30 and 5:00 like in *Hesseltine*.  Also, Plaintiffs estimate that it took them approximately 15 minutes to make "early relief."  As a matter of law, therefore, under the precedent of this District, spending 15 minutes or 2% of a 12 hour shift to make "early relief" is *de minimis* and therefore not a violation of the FLSA.  The *Hesseltine* decision establishes that summary judgment is appropriate in this case.

15

### C.  Other "Off the Clock" Time Is *De Minimis* and Not Compensable.

In their most recent Complaint, Plaintiffs also claim that after the time clocks were installed near the worksites and after the "early relief" practice was discontinued in September 2013, some Plaintiffs continued to show up early.  [*See* Doc. No. 146, at 14].  Newman alleged that the foremen sometimes informed the employees "where they'll be going to work that day because we change often."  Newman Dep. at 88.  Plaintiffs also submitted declarations from employees who all generally claim to have "seen" foremen hand out job assignments prior to shift starting times.  [Doc. No. 146 at 14 and Exhibit M].  Notably, the employees do not identify the foremen in question or even allege that they themselves were ever given such job assignments.  *Id.*

Under applicable case law, even if these allegations were true, this is not compensable time for purposes of the FLSA.  A foreman telling an employee their work location on a given day is not integral and indispensable.  To be "integral and indispensable," an activity "must be necessary to the principal work performed and done for the benefit of the employer." *Von Friewalde*, 339 Fed. Appx. at 454.  Even if these tasks were considered "integral and indispensable," they would still not be compensable because the amount of time spent receiving a work location direction is *de minimis*.  See *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994) (receiving work assignment instructions from supervisors about where an employee was going to work that day prior to the beginning of a shift was not compensable); *Chambers v. Sears Roebuck & Co*., 428 Fed. Appx. 400, 417 (5th Cir. 2011)(receiving work assignments on the way to work is not compensable).

Furthermore, it could not take longer than five seconds to receive such instructions. If the 15 minutes it takes to make "early relief" is *de minimis*, certainly the five seconds it takes for a foreman to tell an employee to "cover line A" (i.e., where to go) is negligible as a matter of law.  *See Hesseltine*, 391 F.Supp. at 519-20; *see also Anderson v. Pilgrim's Pride Corp*., 147

16

F.Supp. 2d 556, 564 (E.D.Tex. 2001) (noting a majority of courts hold that 10 minutes is de minimis).

Therefore, summary judgment is appropriate on these claims, as well.

**D.      Lion adopts the arguments presented by Ashland in their Motion for Summary Judgment [Dkt. No. 238] to the extent that they are applicable to the claims against Lion.**

On February 14, 2018, Ashland filed a Motion for Summary Judgment.  [Dkt. No. 238].  Lion adopts and incorporates by reference the arguments and summary judgment evidence presented by Ashland to the extent that such arguments and evidence support the dismissal of claims against Lion.

## VI.    CONCLUSION

For the foregoing reasons, Lion Elastomers LLC's Motion for Summary Judgment as to all remaining claims should be granted.

Respectfully submitted,

/s/ Teresa Valderrama

OF COUNSEL:

Mauro Ramirez
State Bar No. 24060460
mramirez@fisherphillips.com
FISHER & PHILLIPS
910 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 292-0150 Telephone
(713) 292-0151 Fax

Teresa Valderrama
State Bar No. 2422500
FISHER & PHILLIPS LLP
910 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 292-0150 Telephone
(713) 292-0151 Fax
tvalderrama@fisherphillips.com

ATTORNEY-IN-CHARGE FOR DEFENDANT
LION ELASTOMERS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of February 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the below-listed individuals:

17

John Werner
Mark Frasher
REAUD, MORGAN & QUINN
801 Laurel Street
P.O. Box 26005
Beaumont, Texas 77720-6005

Jason W. Hilliard
DINSMORE & SHOHL LLP
255 E. Fifth Street, Suite 1900
Cincinnati, Ohio 45202

Bruce M. Partain
WELLS, PEYTON, GREENBURG & HUNT LLP
550 Fannin Street, 6th Floor
Beaumont, Texas 77701

*/s/ Teresa Valderrama*  _____
Teresa Valderrama